UNITED STATES of America, Plaintiff,

v.

**HUGO KEY AND SON, INC.,**
**Defendant.**

Civ. A. No. 87–0214 P.

United States District Court,
D. Rhode Island.

March 27, 1989.

See also 672 F.Supp. 656.

---

Casey Shpall, Environmental Enforcement Section, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Mark Denehey, Providence, R.I., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

PETTINE, District Judge.

This action was brought by the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), against Defendant Hugo Key and Son, Inc. ("Hugo Key") for assessment of civil penalties and injunctive relief pursuant to the authority of Section 113(b) of the Clean Air Act ("Act"), 42 U.S.C. § 7413(b). Section 113(b) of the Act authorizes EPA to institute a civil action for injunctive relief and civil penalties for violations of the Act's emission standards and for violations of Section 114(a) reporting requirements and Section 113(a)(3) compliance orders.[1]

---

1. Section 113(b), 42 U.S.C. § 7413(b) provides in    pertinent part that:

The United States has alleged in its complaint that Hugo Key violated Sections 112(c), 113(a)(3) and 114(a) of the Act, 42 U.S.C. §§ 7412(c), 7413(a)(3), 7414(a), and the National Emission Standards for Hazardous Air Pollutants ("NESHAP") for asbestos, 40 C.F.R. Part 61, Subpart M. These violations occurred in connection with a demolition operation conducted by Hugo Key at the United States Naval Base in Newport, Rhode Island.

The United States' allegations are based on Hugo Key's failure to follow certain work practices designed to prevent emissions of asbestos into the outside air. In particular, Defendant is charged with: (1) failure to adequately wet friable asbestos materials during stripping in violation of 40 C.F.R. § 61.147(d); (2) failure to keep friable asbestos materials wet until collected for disposal in violation of 40 C.F.R. § 61.147(e)(1); and, (3) discharging visible emissions into the outside air during the handling of asbestos-containing waste material and failing to use disposal methods specified in the regulations in violation of 40 C.F.R. § 61.152(b).

The United States has also alleged that Hugo Key failed to timely respond to a reporting requirement issued by the United States Environmental Protection Agency ("EPA") in violation of Section 114(a) of the Act, 42 U.S.C. § 7414(a), and failed to timely respond to a compliance order issued by EPA in violation of Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3).

On February 28, 1989, the Court heard the United States' motion for summary

judgment against Hugo Key on the issue of liability. After having considered the submissions of the parties and the arguments of counsel,[2] and reviewing the record in a light most favorable to the Defendant, the Court has determined that there are no issues of material fact as to the five claims alleged in the United States' complaint and that summary judgment should be granted in the United States' favor as to each of those claims.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and other submissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Cia. Petrolera Caribe, Inc. v. ARCO Caribbean, Inc.*, 754 F.2d 404, 411 (1st Cir.1985).[3] The Supreme Court has recognized that summary judgment is a useful tool to assist in achieving a just, speedy and inexpensive determination of litigation. *See, Matsushita Electric Industrial Co., v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (em-

---

The Administrator shall, in the case of any person which is the owner or operator of a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day of violation, or both, whenever such person—

(1) violates or fails or refuses to comply with any order issued under subsection (a) of this section; or ...

(3) violates ... section 7412(c) of this title ...

(4) fails or refuses to comply with any requirement of Section 7414 of this title....

2. In support of its motion for summary judgment, the United States submitted to the Court

affidavits, answers to interrogatories, admissions and depositions. Following oral argument, the Court permitted the United States to file supplemental affidavits in order to clarify certain points made in its motion for summary judgment.

3. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

phasis in original). The United States has demonstrated that there are no genuine issues of fact as to its claims against Hugo Key. Therefore, this Court holds that summary judgment establishing the liability of Defendant on all five claims is appropriate. The Court's specific findings are set forth in the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

The Court finds that there is no genuine dispute as to the following facts. These facts are established for purposes of trial in this matter.

1. Pursuant to Section 112(b) of the Act, 42 U.S.C. § 7412(b), the Administrator of the EPA is required to publish a list of air pollutants that he determines are hazardous and to prescribe an emission standard for each such air pollutant. These emission standards are known as the National Emission Standards for Hazardous Air Pollutants ("NESHAP"). EPA designated asbestos as a hazardous air pollutant in 1971. 36 Fed.Reg. 5931. The asbestos NESHAP was codified at 40 C.F.R. Part 61. The asbestos NESHAP included and includes various regulations related to the emissions and handling of asbestos. In 1984, EPA published amendments to and repromulgated portions of the asbestos NESHAP, which was recodified at 40 C.F.R. Part 61, Subpart M, Sections 61.140 to 61.156. 49 Fed.Reg. 13658, 13661 (April 5, 1984); 49 Fed.Reg. 25453 (June 21, 1984). These amendments did not substantively alter the requirements applicable to renovations and demolitions.

2. Section 112(c)(1)(B) of the Act, 42 U.S.C. § 7412(c)(1)(B), provides that no hazardous air pollutant to which a national emission standard applies may be emitted from any stationary source in violation of the standard. Thus, a violation of NESHAP standard constitutes a violation of Section 112(c) of the Act.

3. Hugo Key is and was at all relevant times a corporation incorporated under the laws of the State of Rhode Island with its principal place of business in Newport, Rhode Island.

4. Hugo Key is and was at all relevant times a construction and demolition contractor.

5. In September 1985, Hugo Key contracted with the United States Navy under Contract N62472–85–C–1830 ("Contract") to conduct a demolition operation involving several buildings located on the Naval Base in Newport, Rhode Island.

6. The buildings to be demolished by Hugo Key under the Contract consisted of five quarters, identified as buildings B, C, D, E, and 131, and four garages.

7. Hugo Key was at all relevant times the contractor and superintendent responsible for the demolition operation.

8. The demolition operation involved a total of 420 linear feet of friable asbestos material on pipes, thereby triggering the asbestos NESHAP work practice standards.

9. The demolition operation was governed by the asbestos NESHAP, 40 C.F.R. Part 61, Subpart M.

10. Hugo Key hired Asbestos Removal and Consulting Company, Inc. ("ARCON") to perform the asbestos removal work required under the Contract.

11. Pursuant to the Contract, ARCON developed an asbestos removal plan for Hugo Key, dated November 18, 1985, requiring that all asbestos removal take place within the sealed-off buildings which would be off-limits to all personnel not directly involved in the removal process until all asbestos was removed.

12. In a letter December 10, 1985, Hugo Key notified the Navy that buildings B and E each contained an asbestos-covered boiler that had not been included in the Contract and requested that the Contract be amended to include additional compensation and contract time to remove the asbestos insulation from the two boilers.

13. On December 30, 1985, Hugo Key and the Navy negotiated an amendment to the Contract to include the removal by ARCON of the asbestos insulation covering the two boilers located in buildings B and E.

14. On or about December 31, 1985, before ARCON had removed the asbestos insulation from the boilers, Hugo Key demolished buildings B and E and lifted the asbestos-covered boilers out of the rubble with a Koehring backhoe without wetting the boilers or taking any precautions to contain the asbestos material or prevent the release of asbestos fibers into the air as required by the asbestos NESHAP.

15. On December 31, 1985, the boiler which had been lifted from building E by Hugo Key, was pushed or dragged along the ground with the Koehring backhoe causing chunks of dry asbestos material to be stripped from the boiler, strewn onto the ground and emitted into 'the air.

16. On December 31, 1985, Navy Construction Representative Martin E. Kawa took samples of the dry asbestos material from the ground around building E to the Industrial Hygenist at the Navy Lab for analysis. The Navy Lab results confirmed that the samples were asbestos.

17. On or about January 3, 1986, David L. Hartshorn, Head Industrial Hygiene Officer for the Naval Hospital, accompanied Lt. William C. Taylor, II, the Navy Construction Project Engineer for the demolition operation, to the site. Mr. Hartshorn took six samples from the ground and boilers at the site of the demolition operation. The Navy Lab analyzed these samples and the results of the analysis established that five of the six samples were friable asbestos.

18. On January 17, 1986, traces of asbestos still remained on the site where buildings B and E had been as a result of Hugo Key's improper handling of the asbestos-covered boilers.

19. At no time during the demolition operation did Hugo Key wet the asbestos-covered boilers.

20. On January 22, 1986, EPA Environmental Engineer Bridget E. McGuiness and Lt. William C. Taylor, II, inspected the site of the demolition operation. During the inspection, Ms. McGuiness took a sample of insulation material from Boiler E.

21. The sample taken by Ms. McGuiness was analyzed by EPA microbiologist Howard Davis who determined that the material was friable asbestos as defined by the asbestos NESHAP, 40 C.F.R. § 61.141.

22. Section 114(a) of the Act, 42 U.S.C. § 7414(a), authorizes the Administrator of EPA to require any person who owns or operates an emission source to provide such information as the Administrator may reasonably require for the purpose of determining whether any person is in violation of any emission standard promulgated pursuant to Section 112(c) of the Act, 42 U.S.C. § 7412(c).

23. On May 15, 1986, EPA issued a Section 114(a) investigatory letter to Hugo Key ("reporting requirement") in order to obtain information on the demolition operation. EPA required a response from Hugo Key within ten days from receipt.

24. Hugo Key received the Section 114(a) reporting requirement on May 19, 1986.

25. Hugo Key failed to respond to the Section 114(a) reporting requirement within the ten day period set for response.

26. If a person fails to respond to a Section 114(a) reporting requirement, Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), authorizes the Administrator of the EPA to issue an immediate compliance order requiring a response within a reasonable period of time which the Administrator shall determine.

27. On or about June 30, 1986, EPA issued an Immediate Compliance Order and Reporting Requirement ("compliance order") to Hugo Key pursuant to Section 113(a)(3) of the Act, ordering Hugo Key to provide information regarding the demolition operation within seven days.

28. Hugo Key received the compliance order on July 3, 1986.

29. Hugo Key failed to respond to the compliance order within the seven day period set for response.

30. Hugo Key did not respond to the Section 114(a) reporting requirement or to the Section 113(a)(3) compliance order until August 12, 1986.

### III. CONCLUSIONS OF LAW

#### A. Violations Of The Clean Air Act And The Asbestos NESHAP Result In Strict Liability

This action was brought pursuant to the authority of the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* The purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). As part of the program to protect the Nation's air, Section 112 of the Act, 42 U.S.C. § 7412, authorizes the Administrator of EPA to publish a list of "hazardous air pollutants" [4] and to prescribe emission standards for hazardous pollutants in the form of National Emission Standards for Hazardous Air Pollutants ("NESHAP"). A NESHAP is to be set at a level to provide an "ample margin" of safety for public health. 42 U.S.C. § 7412(b)(1)(B).

The deleterious effects of asbestos are well documented. Inhalation of asbestos fibers can result in various pulmonary and pleural changes and diseases in humans such as mesothelioma (a form of cancer) and asbestosis. *See,* 38 Fed.Reg. 8820.[5]

Asbestos was one of the earliest substances listed as a hazardous air pollutant in 1971. 36 Fed.Reg. 5931. The NESHAP for asbestos was promulgated in 1973 after extensive evaluation and public comment (38 Fed.Reg. 8820), and is currently set forth at 40 C.F.R. Part 61, Subpart M. The emission standard for asbestos is prescribed by Section 112(c)(1)(B) of the Act, 42 U.S.C. § 7412(c)(1)(B), which provides in pertinent part that "no air pollutant to which [a NESHAP] standard applies may be emitted from any stationary source in violation of such standard ..."

Section 112(e)(1) of the Act, 42 U.S.C. § 7412(e)(1), provides that if it is not feasible to prescribe or enforce an emission standard for control of a hazardous air pollutant, the Administrator of the EPA may instead promulgate a design, equipment, work practice, or operational standard, or combination thereof, which is adequate to protect the public health from such a pollutant with an ample margin of safety. Section 112(e)(5) of the Act, 42 U.S.C. § 7412(e)(5), provides that any work practice standard promulgated as part of a NESHAP "shall be treated as an emission standard."

■ The legislative history of the 1977 amendments to the Clean Air Act makes clear that Congress intended that the Act and the asbestos NESHAP provide strict liability for civil violations of their provisions. H.R.Rep. No. 94–1175, 94th Cong. 2d Sess. 52–53 (1976). Federal courts have consistently adhered to the legislative intent of the Act to provide for strict liability. *See, e.g., United States v. Ben's Truck and Equipment, Inc.,* No. S–84–1672–MLS, 25 ERC 1295, 1298, 1986 WL 15402 (E.D.Cal. 1986) ("the Act and the asbestos NESHAP provide strict liability for civil violations of their provisions.... Strict liability is essential to meet the purpose of the Act to protect and improve the quality of the nation's air"); *United States v. Calaveras Asbestos Ltd.,* Civ. No. F–84–650, Order at 2 (E.D.Cal. October 30, 1985) ("the statute under which this action is brought [42 U.S.C. § 7412(c)(1)(B)] is a strict liability provision to which the risk of harm is no defense"). Therefore, this Court finds that violations of the provisions of the Clean Air Act and the asbestos NESHAP result in strict liability.

#### B. Hugo Key Was Subject To The Requirements Of The Asbestos NESHAP

A major source of airborne asbestos in the demolition or renovation of buildings occurs when asbestos is present in insula-

---

4. A hazardous air pollutant is defined as an air pollutant "which in the judgment of the Administrator causes, or contributes to, air pollution which may reasonably be anticipated to result in an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness." 42 U.S.C. § 7412(a)(1).

5. Congress made a specific finding in regard to the hazardous nature of asbestos in Section 502(a) of the Asbestos School Hazard Abatement Act of 1984, 20 U.S.C. § 4011(a)(3), which states that "medical science has not established any minimum level of exposure to asbestos fibers which is considered to be safe to individuals exposed to the fibers;...."

tion. 38 Fed.Reg. 8821. Since no level of exposure to asbestos is deemed safe, the asbestos NESHAP for demolition and renovation operations is designed to prevent emissions of asbestos fibers to the outside air. The standards for controlling asbestos emissions are expressed in the form of work practice requirements. *See,* 40 C.F.R. §§ 61.140–61.156.

The asbestos NESHAP requires each owner or operator of a demolition operation to comply with the work practices set forth in 40 C.F.R. § 61.147, where the amount of friable asbestos [6] materials in the facility being demolished is at least 260 linear feet on pipes or at least 160 square feet on other facility components. 40 C.F.R. § 61.145(a).

The terms "owner or operator" and "stationary source" are explained in the Federal Register notice promulgating the 1984 amendments to the asbestos NESHAP, 49 *Fed.Reg* 13658, 13659 (April 5, 1984), as follows:

> The general provisions of 40 C.F.R. Part 61 define "owner or operator" as any person who owns, leases, operates, controls, or supervises a stationary source (40 C.F.R. § 61.02(1)). The stationary source in this case is the demolition or renovation operation. The demolition or renovation contractor would clearly be considered an owner or operator by "operating" the stationary source.... Therefore, the standard applies to both the contractor and the facility owner or operator.

■ The stationary source of emissions in a demolition or renovation operation is, by definition, the operation itself. Therefore, the demolition of buildings conducted by Hugo Key at the Naval Base was a "demolition operation." The "owner or operator" of a demolition operation is any person who "owns, leases, operates, controls or supervises" the demolition operation. 40 C.F.R. § 61.02. Hugo Key was the contractor of the demolition operation

and supervised the job. Moreover, the demolition contractor is, by definition, the owner or operator of the demolition operation. Therefore, this Court finds that Hugo Key was the "owner or operator" of the "demolition operation" within the meaning of the Act and the asbestos NESHAP.

It is undisputed that the amount of friable asbestos in the buildings being demolished was at least 420 linear feet on pipes. This amount of friable asbestos was clearly in excess of the threshold quantity of 260 linear feet on pipes, thereby requiring compliance by Hugo Key with the asbestos NESHAP work practice standards. Therefore, this Court finds that all substantive requirements of the asbestos NESHAP at issue in this action were applicable to the demolition operation conducted by Hugo Key.

The work practice violations concern Hugo Key's failure to adequately wet friable asbestos materials covering the boilers during stripping (40 C.F.R. § 61.147(d)), failure to adequately wet friable asbestos materials that were stripped from the boilers with a backhoe to ensure that the friable asbestos materials remained wet until collected for disposal (40 C.F.R. § 61.147(e)(1)), and discharging visible emissions into the outside air during the collection, processing, packaging, transporting, or disposal of asbestos-containing waste material, and without following one of the disposal methods specified in the regulations (40 C.F.R. § 61.152(b)).

### C. Hugo Key Failed To Adequately Wet Friable Asbestos Materials During Stripping

■ The United States claims in the third count of its complaint that Hugo Key failed to adequately wet friable asbestos materials during stripping in violation of 40 C.F.R. § 61.147(d) and Section 112(c) of the Act, 42 U.S.C. § 7412(c). As previously

---

**6.** The asbestos NESHAP defines friable asbestos, 40 C.F.R. § 61.141, as follows: *"Friable asbestos material means any material containing more than 1 percent asbestos by weight that hand pressure can crumble, pulverize, or reduce to* powder when dry." In common usage, "friable" means "easily crumbled or pulverized." Webster's Ninth New Collegiate Dictionary 493 (1985).

stated, the Court finds that there is no dispute that Hugo Key was the owner or operator of a demolition operation involving at least 260 linear feet of friable asbestos on pipes, and that the asbestos NESHAP work practice standards were, therefore, applicable. The remaining elements the United States must prove to establish a violation of 40 C.F.R. § 61.147(d) are that Hugo Key removed facility components and failed to either adequately wet the friable asbestos materials on those components during stripping or use a local exhaust ventilation system designed and operated to capture the particulate asbestos material produced by the stripping.

Hugo Key does not dispute that it removed the asbestos-covered boilers from buildings B and E with a backhoe during the demolition operation. There is also no dispute that some asbestos insulation was stripped from at least one of the boilers when it was removed from the building and pushed by the backhoe. Hugo Key admits that at no time during the demolition operation did it wet the asbestos-covered boilers. Nor does Hugo Key claim that it used a local exhaust or ventilation and collection system to capture particulate asbestos material. The boiler insulation was sampled by both the EPA and the Navy and their analyses establish that the material covering the boilers was friable asbestos. Thus, the elements for a one day violation of 40 C.F.R. § 61.147(d) and Section 112(c) of the Act have been established and the Court holds that the United States is entitled to summary judgment as to this claim.

### D. Hugo Key Failed To Keep Friable Asbestos Materials Wet Until Collected For Disposal

The United States claims in the fourth count of its complaint that Hugo Key failed to adequately wet the friable asbestos materials stripped from the boilers to ensure that the friable asbestos materials remained wet until collected for disposal, in violation of 40 C.F.R. § 61.147(e)(1) and Section 112(c) of the Act, 42 U.S.C. § 7412(c). As previously stated, the Court finds that there is no dispute that Hugo Key was the owner or operator of a demoli-

tion operation involving at least 260 linear feet of friable asbestos on pipes, and that the asbestos NESHAP work practice standards were, therefore, applicable. The remaining element the United States must prove to establish a violation of 40 C.F.R. § 61.147(e)(1) is that Hugo Key failed to adequately wet stripped friable asbestos materials to ensure that they remained wet until collected for disposal.

■ There is no dispute that two asbestos-covered boilers were removed from buildings B and E by Hugo Key with a backhoe and that some of the insulation from at least one of the boilers was stripped when it was pushed along the ground with the backhoe. Hugo Key also admits that at no time during the demolition operation did it wet the asbestos-covered boilers. The Navy took samples of the insulation material that was scattered on the ground on December 31, 1985, and those samples were dry. Six more samples of dry insulation were taken from the ground and the boilers at the site of the demolition operation by the Navy on January 3, 1986, and five of the samples proved to be friable asbestos. The sample taken from boiler E by EPA also proved to be friable asbestos. Thus, the elements for at least a one day violation of 40 C.F.R. § 61.147(e)(1) and Section 112(c) of the Act have been established and the Court holds that the United States is entitled to summary judgment as to this claim.

### E. Hugo Key Discharged Visible Emissions Into The Outside Air During The Handling Of Asbestos–Containing Waste Material

■ The United States claims in the fifth count of its complaint that Hugo Key discharged visible emissions into the outside air during the handling of asbestos-containing waste material, and did not use one of the disposal methods specified in 40 C.F.R. § 61.152(b)(1)–(3), in violation of 40 C.F.R. § 61.152(b) and Section 112(c) of the Act, 42 U.S.C. § 7412(c). As previously stated, the Court finds that there is no dispute that Hugo Key was the owner or operator of a

demolition operation involving at least 260 linear feet of friable asbestos on pipes, and that the asbestos NESHAP work practice standards were, therefore, applicable. The remaining elements the United States must prove to establish a violation of 40 C.F.R. § 61.152(b) are that Hugo Key discharged visible emissions into the outside air during collection, processing, packaging, transporting, or deposition of asbestos-containing waste material, and that Hugo Key failed to use one of the disposal methods specified in 40 C.F.R. § 61.152(b)(1)–(3).[7]

It is undisputed that the boilers were covered with friable asbestos material. Nor is it disputed that dry, friable asbestos insulation material fell to the ground from at least one of the boilers when it was removed from the building with a backhoe. Traces of asbestos remained on the ground until January 17, 1986. In addition, Hugo Key does not dispute that it did not take any precautions to contain the materials so exposed, or to prevent release of asbestos fibers into the air.

Since visible emissions were discharged uncontained to the outside air, one of the disposal methods specified in the regulations would have had to be used by Hugo Key to avoid liability under 40 C.F.R. § 61.152(b). These include wetting the friable asbestos, processing it into nonfriable forms, or using a disposal method approved by EPA. Hugo Key admits that at no time during the demolition operation did it wet the asbestos. No claim is made by Hugo Key that it processed the asbestos into a

nonfriable form. No other disposal method was approved by EPA, nor did the asbestos removal plan specify any alternative disposal method. Thus, the elements for at least a one day violation of 40 C.F.R. § 61.152(b) and Section 112(c) have been established and the Court holds that the United States is entitled to summary judgment as to this claim.

### F. Hugo Key Failed To Timely Respond To EPA's Section 114(a) Reporting Requirement

■ The United States claims in the first count of its complaint that Hugo Key failed to respond in a timely manner to EPA's reporting requirement seeking information on the demolition operation in violation of Section 114(a) of the Act, 42 U.S.C. § 7414(a). EPA is authorized, under Section 114(a) of the Act, to seek information from any person who owns or operates an emission source in order to establish compliance with the Act.[8] The information obtained by EPA pursuant to this broad investigatory power is vital to its ability to establish violations of the Act and the asbestos NESHAP. Violations of Section 114(a) reporting requirements and Section 113(a)(3) compliance orders are reviewed under the strict liability standard of the Act.[9] *United States v. Harford Sands, Inc.,* 575 F.Supp. 733, 735 (D.Md.1983).

In order to establish a violation of Section 114(a), the United States must demonstrate that Hugo Key is a person who owns

---

7. The disposal methods specified in 40 C.F.R. § 61.152(b)(1)–(3) include treating the material with water, processing it into nonfriable forms or using another method approved by EPA.

8. Section 114(a) of the Act, 42 U.S.C. § 7414(a), provides in pertinent part:

   For the purpose (i) of developing or assisting in the development of ... any emission standard under section 7412 of this title, (ii) of determining whether any person is in violation of any such standard ... or (iii) carrying out any provision of this chapter ...

   (1) The Administrator may require any person who owns or operates any emission source ... to (A) establish and maintain such records, (B) make such reports, ... and (E) provide such other information as he may reasonably require....

9. The First Circuit has recognized the importance of EPA's ability to seek information from persons in order to enforce the federal environmental laws. The Court upheld a civil penalty of $20,000 per defendant for violation of the Resource Conservation and Recovery Act's reporting requirements, stating that:

   [U]nless the civil penalty provision of the RCRA is applicable to those who refuse to honor the EPA's inquisitorial authority under § 6927(a), the agency will be severely—indeed, unduly—handicapped in its attempt to effectuate needed regulation....

   *United States v. Charles George Trucking Co.,* 823 F.2d 685, 689 (1st Cir.1987).

or operates a stationary source, that EPA issued Hugo Key a Section 114(a) reporting requirement requesting information, and that Hugo Key failed to respond to the reporting requirement in a timely manner.

A "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), includes a corporation. Hugo Key admits that it is a corporation. Therefore, Hugo Key is a person under the Act. As previously stated, the Court finds that there is no dispute that Hugo Key was the owner or operator of a demolition operation which is by definition a stationary source.

The following facts are admitted by Hugo Key. On May 15, 1986, EPA issued a Section 114(a) reporting requirement to Hugo Key asking for information on the demolition operation. Hugo Key received the reporting requirement on May 19, 1986, but failed to respond within the required ten day period. Hugo Key did not respond to the reporting requirement until August 12, 1986. Thus, the elements of a 77 day violation of Section 114(a) of the Act, 42 U.S.C. § 7414(a), have been established and the Court holds that the United States is entitled to summary judgment as to this claim.

### G. Hugo Key Failed To Timely Respond To EPA's Section 113(a)(3) Compliance Order

■ The United States claims in the second count of its complaint that Hugo Key failed to respond in a timely manner to EPA's compliance order issued pursuant to Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), seeking to enforce compliance with the Section 114(a) reporting requirement. If a person fails to timely respond to a Section 114(a) reporting requirement, EPA is authorized, under Section 113(a)(3) of the Act, to issue an immediate compliance order or bring a civil enforcement action against such person.[10]

In order to establish a violation of an order issued pursuant to Section 113(a)(3), the United States must demonstrate that Hugo Key is a person who has violated Section 114(a) of the Act, that EPA issued Hugo Key a Section 113(a)(3) compliance order, and that Hugo Key failed to respond with the compliance order in a timely manner.

As previously stated, Hugo Key is a person within the meaning of the Act who violated EPA's Section 114(a) reporting requirement. The following facts are admitted by Hugo Key. On or about June 27, 1986, EPA issued an Immediate Compliance Order and Reporting Requirement ("compliance order") to Hugo Key to enforce the Section 114(a) reporting requirement. Hugo Key received the compliance order on July 3, 1986, but failed to respond within the required seven day period. Hugo Key did not respond to the compliance order until August 12, 1986. Thus, the elements of a 33 day violation of Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3) have been established and the United States is entitled to summary judgment as to this claim.

Consistent with the foregoing:

1. Summary judgment on liability as to the alleged violation of 40 C.F.R. § 61.147(d), is GRANTED in favor of the Plaintiff United States;

2. Summary judgment on liability as to the alleged violation of 40 C.F.R. § 61.147(e)(1), is GRANTED in favor of the Plaintiff United States;

3. Summary judgment on liability as to the alleged violation of 40 C.F.R. § 61.152(b), is GRANTED in favor of the Plaintiff United States;

4. Summary judgment on liability as to the alleged violation of Section 114(a) of the Act, 42 U.S.C. § 7414(a), is GRANTED in favor of the Plaintiff United States; and,

---

**10.** Section 113(a)(3), 42 U.S.C. § 7413(a)(3), provides in pertinent part that:

Whenever, on the basis of any information available to him, the Administrator finds that any person ... is in violation of any requirement of section 7414 of this title (relating to

inspections, etc.), he may issue an order requiring such person to comply with such section or requirement, or he may bring a civil action in accordance with subsection (b) of this section.

5. Summary judgment on liability as to the alleged violation of Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), is GRANTED in favor of the Plaintiff United States.

The remaining issues in this action concern the United States' request for the assessment of civil penalties and injunctive relief against Hugo Key for its violations of the Act and asbestos NESHAP. These matters have been set down for trial commencing on March 27, 1989.

IT IS SO ORDERED.