910 P.2d 940

**Judith M. ESPINOSA, in her official capacity as Secretary of the New Mexico Environment Department, and the New Mexico Environment Department, Plaintiffs–Appellees/Cross–Appellants,**

v.

**ROSWELL TOWER, INC., Ray Bell, Jack Lovelady, Tom Lancaster, Leonard Talbert, Earnest Newlin, and Jack Lemmons, d/b/a Jack's Tractor Works, Defendants–Appellants/Cross–Appellees.**

No. 14417.

Court of Appeals of New Mexico.

Dec. 6, 1995.

Tom Udall, Attorney General, Ripley B. Harwood, Special Asst. Atty. Gen., Geoffrey Sloan, Special Asst. Atty. Gen., New Mexico Environment Department, Santa Fe, for Plaintiffs–Appellees/Cross–Appellants.

Timothy J. Cusack, Cusack, Jaramillo & Associates, P.C., Roswell, Bruce S. Garber, Garber & Hallmark, P.C., Santa Fe, for Defendants–Appellants/Cross–Appellees.

## OPINION

ALARID, Judge.

1. Roswell Tower, Inc. (RTI) appeals, and the New Mexico Environment Department (NMED) cross-appeals, from penalties and costs awarded against RTI for nuisance and regulatory and statutory violations resulting from asbestos removal at the Petroleum Building (the building) in Roswell, New Mexico.

2. On appeal, Appellants challenge all penalties imposed and the sufficiency of the evidence to support findings that justify the penalties. On cross-appeal, NMED challenges the amount of statutory penalties imposed, and certain findings relevant to the issue. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

3. NMED's complaint sought damages, punitive damages, civil statutory penalties, and injunctive relief for asbestos removals and disposals. Appellants include the owner of the building, RTI, as well as RTI's chief executive officer Ray Bell (Bell) and the building's manager Leonard Talbert (Talbert) during the periods at issue: from January 1, 1982 through August 23, 1984, and from August 24, 1984 through June 5, 1990 (the relevant periods).

4. NMED learned of Appellants' activities when NMED responded to suspected asbestos violations reported by a building tenant on June 6, 1990. Further investigation revealed that, since 1982 when RTI acquired ownership of the building, RTI had, under Talbert's supervision, repeatedly knocked out and replaced ceilings throughout the building. NMED also discovered that Appellants had dumped some ceiling debris near an abandoned city landfill (the old city landfill), located near a residential neighborhood and a baseball field in an area frequented by the public. Although NMED unsuccessfully sought to compel Appellants to dispose properly of the asbestos-containing debris, the complaint encompasses violations at this site.

5. The time span is divided into two relevant periods to distinguish between the controlling law. August 24, 1984 marks the effective date of NMED Air Quality Control Regulation 751 (AQCR 751), adopted under the authority of the Air Quality Control Act (AQCA), NMSA 1978, §§ 74-2-1 to -17 (Repl.Pamps. 1990 & 1993). See § 74-2-6(F) (effective date of regulations). AQCR 751 adopted by reference the asbestos national emission standards for hazardous air pollutants (the asbestos NESHAP) promulgated by the United States Environmental Protection Agency (EPA), 40 C.F.R. Part 61, as amended in the Federal Register through December 9, 1983. As federal law, the asbestos NESHAP applied in New Mexico during the first relevant period ending on August 23, 1984.

6. According to the judgment, Appellants conducted over seventy asbestos removal and disposal jobs during the relevant periods: over ten removals between January 1, 1982 and August 23, 1984, in violation of the asbestos NESHAP and nuisance laws at a penalty of $10,000; and over sixty removals between August 24, 1984 and June 5, 1990, in violation of AQCR 751, the asbestos NESHAP, and nuisance laws at a penalty of $60,-000. Appellants were also found liable for dumping at the old city landfill, and fined $6,837, three times NMED's removal costs. Charges against all Appellants except RTI, Bell, and Talbert were dismissed with prejudice.

## ISSUES ON APPEAL

7. Appellants challenge both the factual and legal bases of the damages awarded. Because the penalties are supported by the facts, viewed in a light most favorable to the judgment, and are consistent with law, we affirm the issues raised on appeal. *See Baxter v. Gannaway*, 113 N.M. 45, 48, 822 P.2d 1128, 1131 (Ct.App.) (standard of review), *cert. denied*, 113 N.M. 16, 820 P.2d 1330 (1991); *Naranjo v. Paull*, 111 N.M. 165, 173, 803 P.2d 254, 262 (Ct.App.1990) (award of punitive damages appropriate when there was no substantial doubt about the legal basis for the award).

### I. Common–Law Public Nuisance

8. The trial court awarded a $10,000 judgment against Appellants for the "public nuisance" of asbestos removals in violation of the asbestos NESHAP. Appellants claim that the trial court erred because (1) penalties can only be imposed when authorized by statute, and (2) statutory nuisance requires knowledge and does not authorize civil penalties. *See* NMSA 1978, § 30-8-1 (Repl. Pamp.1994) (public nuisance). Because the judgment made no finding about knowledge, Appellants contend that the public nuisance

findings and penalties must be reversed. We do not agree.

9. Although NMED concedes that statutory public nuisance requires knowledge, NMED claims that the judgment relates to common-law nuisance, as charged in the complaint, which requires no element of knowledge. *See City of Albuquerque v. State ex rel. Village of Los Ranchos de Albuquerque,* 111 N.M. 608, 612, 808 P.2d 58, 62 (Ct.App. 1991), *cert. denied,* 113 N.M. 524, 828 P.2d 957 (1992). The Environmental Improvement Act (EIA) bestows upon NMED responsibility for air quality management, NMSA 1978, § 74–1–7(A)(4) (Repl. Pamps.1990 & 1993), and authorizes NMED to exercise all powers reasonable and necessary to accomplish its statutory duties. NMSA 1978, § 74–1–6(H) (Repl.Pamps.1990 & 1993), –6(I) (Supp.1994). Because the EIA did not repeal by implication common-law remedies for nuisance, *Gonzalez v. Whitaker,* 97 N.M. 710, 714, 643 P.2d 274, 278 (Ct.App. 1982), we concur with NMED's reading of the judgment.

■ 10. A nuisance in fact is distinguished from a nuisance per se in that a nuisance in fact may become a nuisance by reason of its circumstances, location, or surroundings, whereas a nuisance per se is always a nuisance regardless of these factors. *City of Albuquerque,* 111 N.M. at 612, 808 P.2d at 62. An activity conducted or maintained contrary to law may be a public nuisance per se when the activity unreasonably interferes with a right common to the general public. *Cf. id.* at 615, 808 P.2d at 65 (absent other illegality, lawful authority to conduct an activity provides a valid defense to the claim that the activity constitutes nuisance per se); *Equitable Gen. Ins. Co. v. Silva,* 99 N.M. 371, 373, 658 P.2d 446, 448 (Ct.App.) (violation of statute enacted for protection of public is negligence per se), *cert. denied,* 99 N.M. 358, 658 P.2d 433 (1983).

11. Emissions of hazardous substances into the environment have constituted nuisances per se in other jurisdictions. *See State v. Fermenta ASC Corp.,* 160 Misc.2d 187, 608 N.Y.S.2d 980, 985 (Sup.Ct.1994) (release of hazardous waste is nuisance per se);

*Branch v. Western Petroleum, Inc.,* 657 P.2d 267, 276 (Utah 1982) (pollution of water is nuisance per se). According to trial testimony, this case concerns the worst air pollution to have ever occurred in New Mexico.

12. We determine that violations of the asbestos NESHAP created a public nuisance per se. Because public nuisance per se depends upon the degree of violation and the interests invaded, we conclude that knowledge that an activity violates the law is not an essential element of the cause of action in this case. *See Fermenta,* 608 N.Y.S.2d at 988 (person may be liable for public nuisance irrespective of fault).

## II. Punitive Damages

■ 13. Nuisance law in our state has largely evolved in the context of injunctive relief. *See, e.g., State ex rel. N.M. Water Quality Control Comm'n v. City of Hobbs,* 86 N.M. 444, 446, 525 P.2d 371, 373 (1974) (negligent operation of sewer plant as public nuisance); *Town of Clayton v. Mayfield,* 82 N.M. 596, 485 P.2d 352 (1971); *Koeber v. Apex–Albuq Phoenix Exp.,* 72 N.M. 4, 380 P.2d 14 (1963).

14. Other jurisdictions have (1) determined that the state's interest in its air, land, and water supports a nuisance claim for monetary damages, *see Selma Pressure Treating Co. v. Osmose Wood Preserving Co. of Am.,* 221 Cal.App.3d 1601, 271 Cal.Rptr. 596, 605–06 (1990) (list of cases from around the country allowing such recovery), and (2) recognized the state's right to seek punitive damages for common-law public nuisance based on the need for deterrence and the inadequacy of actual or nominal damages. *See National Audubon Soc'y v. Department of Water,* 869 F.2d 1196, 1204 (9th Cir.1988) (state common-law nuisance particularly appropriate to air pollution); *State ex rel. Dresser Indus., Inc. v. Ruddy,* 592 S.W.2d 789, 793 (Mo.1980) (en banc) (where neither party could cite precedent to deny public authority's right to recover punitive damages for common-law public nuisance, and where public policy furthered by recovery in cases of environmental degradation, award is at discretion of trial court); *cf. State ex rel. Pollu-*

*tion Control Coordinating Bd. v. Kerr–McGee Corp.,* 619 P.2d 858, 861 (Okla.1980) (state could seek punitive damages for water pollution under common-law negligence theory in addition to statutory remedies). "[P]unitive damages clearly are rationally connected to the public policy of protecting public health and the environment." *United States v. Hooker Chems. & Plastics Corp.,* 748 F.Supp. 67, 79 (W.D.N.Y.1990) (federal court applying state law denied the defendant's motion to dismiss punitive damage claim for common-law public nuisance).

■ 15. Punitive damages are valid when predicated on an established cause of action. *Sanchez v. Clayton,* 117 N.M. 761, 766–67, 877 P.2d 567, 572–73 (1994); *cf. Selma Pressure Treating Co.,* 271 Cal.Rptr. at 606 (state's right to recover monetary damages is not diminished by the coexistence of express statutory remedies where legislation does not presume to preempt common-law rights). Having determined that the penalties stem from a cause of action based on Appellants' failure to comply with regulations regarding the removal and disposal of asbestos, we reject Appellants' challenge to the penalties. *Cf. Gonzales v. Surgidev Corp.,* 120 N.M. 133, 147–48, 899 P.2d 576, 590–91 (1995) (even compliance with regulations will not preclude an award of punitive damages).

### III. Violations of AQCR 751

16. Appellants challenge the findings of AQCR 751 violations on grounds that: (1) NMED did not prove emissions to the outside air; (2) AQCR 751 exceeds statutory authority; (3) NMED is legally precluded by Appellants' lack of knowledge and reasonable opportunity to comply; and (4) NMED is equitably estopped from enforcing AQCR 751.

■ 17. Our consideration of these issues focuses on the fact that AQCR 751 must be no more or less stringent than the asbestos NESHAP. Section 74–2–5(B)(1) (Repl. Pamp.1990), –5(C)(2)(a) (Repl.Pamp.1993). Therefore, in construing AQCR 751, we find interpretations of the federal standards, and their policy bases, to be persuasive. *See Vulcraft v. Midtown Business Park, Ltd.,* 110 N.M. 761, 765, 800 P.2d 195, 199 (1990)

(statutory construction of statute modeled after that of another state); *Benavidez v. Benavidez,* 99 N.M. 535, 539, 660 P.2d 1017, 1021 (1983) (because state procedural rule was identical to federal procedural rule, federal law construing rule was persuasive).

■ 18. Appellants' challenge to the work practice standards focuses on the AQCA's proscription that "[r]egulations shall not specify the method to be used to prevent or abate air pollution." Section 74–2–5(B)(1) (Repl.Pamp.1990). The work practice standards are necessary to prevent emissions to ambient air. *See United States v. Walsh,* 8 F.3d 659, 664 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). "Asbestos was one of the earliest substances listed as a hazardous air pollutant in 1971." *United States v. Hugo Key & Son, Inc.,* 731 F.Supp. 1135, 1140 (D.R.I.1989). No minimum level of exposure is considered to be safe. *Id.* at n. 5. The nature of asbestos prompts us to conclude that any release of asbestos particles results in contamination of the ambient air.

19. Because the release occurs during renovations and demolitions such as those at bar, AQCR 751 necessarily must prevent emissions by setting standards for these activities to ensure the containment of asbestos particles. The activity itself becomes a source that is subject to regulation to prevent air contamination. *See* § 74–2–2(G) (Repl.Pamp.1990) ("emission standard" means a requirement that limits the quantity, rate, or concentration of emissions of air contaminants, including any requirements relating to the operation or maintenance of a source), –2(S) ("source" means any building or operation that emits air contaminant). Therefore, AQCR 751 regulates work practices as emission standards. To adopt Appellants' interpretation of the statutory proscription, as applicable to the work practices at issue, would be to gut the regulation of asbestos emissions in contravention of reason and law. *See* § 74–2–5(A) (Repl.Pamp.1990) (regulations shall prevent or abate air pollution), –5(B) (regulations shall be no less stringent and no more stringent than federal regulations); *Dona Ana Sav. & Loan Ass'n*

v. *Dofflemeyer,* 115 N.M. 590, 592–93, 855 P.2d 1054, 1056–57 (1993) (statutes must be interpreted consistent with legislative intent and not in manner that would render statute's application absurd, unreasonable, or unjust). The standards are required for parity with the federal regulations.

20. *Walsh* persuades us that AQCR 751 applies to the emissions at issue regardless of evidence whether emissions reached the ambient air. As we have just explained, work practice standards are emission standards. In *Walsh,* the defendant unsuccessfully challenged the asbestos NESHAP enforcement action on grounds that the plaintiff had not proved actual emissions to the outdoor atmosphere: "Walsh's attempt to sidestep the work practice rules by his argument that emissions must reach the outside area fails to disturb the validity of the regulations that he is found to have violated. . . . The question of emission of an air pollutant to the ambient air is not relevant." *Walsh,* 8 F.3d at 664. Therefore, we reject the first two prongs of Appellants' challenge to the regulatory violations.

21. Turning to the issue of enforcement without knowledge, we note that NMED has failed to brief the strict-liability issue in accordance with SCRA 1986, 12–213(B) (Cum.Supp.1995). *See State v. Aragon,* 109 N.M. 632, 634, 788 P.2d 932, 934 (Ct.App.) (incorporation of arguments in other pleadings by reference is not an acceptable briefing practice), *cert. denied,* 109 N.M. 563, 787 P.2d 1246 (1990). Because Appellants raised the issue, we address the merits to find that civil violations of the federal Clean Air Act (CAA) and the asbestos NESHAP are strict-liability offenses. *See Hugo Key,* 731 F.Supp. at 1140 (Congress clearly intended that CAA and asbestos NESHAP provide strict liability for civil violations); *United States v. Tzavah Urban Renewal Corp.,* 696 F.Supp. 1013, 1020 (D.N.J. 1988); *United States v. Ben's Truck & Equip., Inc.,* 25 E.R.C. 1295, 1298, 1986 WL 15402 (E.D.Cal.1986). Neither the federal regulatory statute nor the regulations promulgated thereunder require knowledge because strict liability is essential to further the purpose of the law. *See Tzavah Urban Re-*

*newal Corp.,* 696 F.Supp. at 1020–21 (strict-liability approach is consistent with both federal regulatory and criminal statutes designed to protect the public welfare, as well as well-accepted principles of tort law). The New Mexico statute should be construed similarly. *See State Dep't of Envtl. Regulation v. SCM Glidco Organics Corp.,* 606 So.2d 722, 725, 728 (Fla.Dist.Ct.App.1992) (strict liability applied to state regulation, adopting asbestos NESHAP by reference, based on federal interpretation and consistency with state law and policy); *Safe Env't, Inc. v. Pollution Control Hearings Bd.,* 68 Wash. App. 177, 841 P.2d 1327, 1331 n. 2 (1992) (with reference to the asbestos NESHAP cases, court suggested that strict liability would be appropriate for violations of the state's work practice standards), *review denied,* 121 Wash.2d 1022, 854 P.2d 1084 (1993).

22. A plain reading of Section 74–2–12(E) (Repl.Pamp.1990), contravenes Appellants' argument that statutory penalties cannot be imposed without NMED having first sought voluntary cooperation and compliance. Appellants advance an untenable interpretation that would render the enforcement provision inapplicable to past violations that had ceased before being discovered. *See State ex rel. New Mexico Water Quality Control Comm'n v. Molybdenum Corp. of Am.,* 89 N.M. 552, 555, 555 P.2d 375, 378 (Ct.App.) (court will not advance interpretation yielding absurd results), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976).

23. Also, the facts fail to demonstrate conduct by NMED that satisfies the elements of equitable estoppel: false representation or concealment of material facts, knowledge of true facts, and intention or expectation that the innocent party rely on those facts. *See Green v. New Mexico Human Servs. Dep't,* 107 N.M. 628, 629, 762 P.2d 915, 916 (Ct.App.1988) (elements of equitable estoppel). Appellants' charge stems from previous asbestos testing at the building. According to the evidence, an asbestos contractor, who was hired by a building tenant to take air quality samples sometime in the period from 1984 to 1987, testified that he prepared a *confidential* bulk sample report for his client. Furthermore, there is no

evidence of concealment or detrimental reliance on concealment to Appellants' prejudice. Appellants fail to convince us that the trial court erred in its evaluation of the evidence. *See In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.) ("[The appellate] court will not search the record to find evidence to support an appellant's claims."), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992). Accordingly, we reject the foregoing challenges to penalties imposed for violations of AQCR 751.

### IV. The Disposal Penalty

■ 24. Appellants argue that the $6,837 award is not authorized by law and is therefore erroneous. The amount represents three times the costs that NMED incurred in contracting for removal of the pile, including a six percent gross receipts tax. We find no abuse of discretion because the amount is consistent with penalties authorized by law. *See* §§ 74–2–12(E) (Repl.Pamp.1990) (potential $1,000 daily penalty per violation; "*Each day during any portion of which the violation occurs constitutes a separate [penalty].*") (emphasis added), –12.1(A) (Repl. Pamp.1993) (effective March 5, 1992) ($15,000 potential daily penalty per violation); *Roselli v. Rio Communities Serv. Station, Inc.,* 109 N.M. 509, 512, 787 P.2d 428, 431 (1990) ("A trial court abuses its discretion when its decision is contrary to logic and reason.").

### V. Sufficiency of the Evidence

■ 25. We reject Appellants' challenge to the sufficiency of the evidence because (1) only ultimate findings are required, and (2) the challenge is inadequate as a matter of law. Viewing the findings in a manner most likely to support the judgment, we determine that the judgment includes adequate, ultimate findings based on proposed ultimate facts submitted by the parties. *See Herrera v. Roman Catholic Church,* 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991) (on appeal, findings viewed in light most favorable to the judgment and judgment affirmed if basis for decision sufficiently embodied in findings and conclusions); *Galvan v. Miller,* 79 N.M. 540, 544, 445 P.2d 961, 965 (1968) (ultimate facts are

those facts necessary to determine the issues in the case). Necessary facts may be inferred from these findings. *Herrera,* 112 N.M. at 721, 819 P.2d at 268.

26. The applicability of the asbestos NESHAP and AQCR 751 is implicit in findings that the ceiling material contained more than one percent friable asbestos, and that 160 square feet of asbestos or more were removed during each relevant period. *See* 40 C.F.R. § 61.145(d) (1984) and § 61.145(a)(4)(i) (1990) (regulations apply if 160 square feet or more friable asbestos removed from facility). The trial court found that Appellants had removed over 15,000 square feet of asbestos from the building during the relevant periods.

■ 27. Appellants' argument, concerning the need for evidence that they personally removed asbestos from the building or disposed of it at the old city landfill, fails as a matter of law. The trial court found that during the relevant periods, RTI owned and operated the building, Bell was CEO of RTI, and Talbert was the building manager who supervised work practices during asbestos removals. Bell exercised ultimate decision-making authority regarding asbestos removals and disposals. Because Appellants have not challenged these findings, they are binding on appeal. *Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991).

28. As we previously discussed, we are persuaded by the interpretation and application of the federal law on which AQCR 751 is predicated. Appellants as owners, operators, and supervisors of the source were liable for compliance with the regulations. *See Hugo Key,* 731 F.Supp. at 1141 (liability for NESHAP compliance falls on the facility's—stationary source's—"'owner *or* operator'," defined in 40 C.F.R. § 61.02(1) (1984) to include any person who owns, leases, operates, controls, or supervises the renovation operation) (emphasis added); *Tzavah Urban Renewal Corp.,* 696 F.Supp. at 1021 (citing definition of "person" under 40 C.F.R. § 61.02 to conclude that agents for owners or operators are liable when they supervise or control a stationary source); *Ben's Truck & Equip., Inc.,* 25 E.R.C. at 1298 (demolition contractor is owner or operator of stationary source).

**314**

Because the basis of Appellants' liability is sufficiently defined in the findings and conclusions, we conclude that the judgment contains no reversible error. *See Sheraden v. Black,* 107 N.M. 76, 80–81, 752 P.2d 791, 795–96 (Ct.App.1988) (when judgment capable of meaningful review, function of reviewing court is to correct erroneous results, not errors that are harmless).

29. Finally, Appellants failed to comply with the appellate rule that requires a party who challenges trial-court findings to summarize all of the evidence bearing on the finding. *See* SCRA 1986, 12–213(A)(3) (Cum. Supp.1995). Therefore, we deem that Appellants have waived review of this issue. *See Martinez v. Southwest Landfills, Inc.,* 115 N.M. 181, 185–86, 848 P.2d 1108, 1112–13 (Ct.App.1993) (purpose of procedure and consequences of failure to comply).

## ISSUES ON CROSS–APPEAL

30. NMED claims that the trial court erred in awarding statutory penalties because the court should have (1) calculated penalties according to the number of violations per day, (2) and imposed the maximum fine per violation per day unless (3) Appellants presented mitigating evidence. NMED also claims that (4) the trial court should have held that Appellants had actual or constructive knowledge of asbestos in the building and of the requirements for its removal and disposal. As evidence of the court's abuse of discretion, NMED contends that the penalty fails to offset the economic gain realized by noncompliance, and therefore it cannot possibly serve as a deterrent.

31. NMED claims that the penalty should have been six times greater than the $60,000 imposed because NMED proved all six regulatory violations charged, and the court found at least sixty removals in violation of AQCR 751. In support of maximum penalties per violation, NMED directs our attention to similar penalty provisions in the CAA and the Clean Water Act (CWA), which federal courts have found to be *in pari materia,* to assert that the penalty provisions of the AQCA and the CWA are "indistinguishable."

32. To the contrary, our state penalty provision on its face is distinguishable from the CWA because imposition of penalties is permissive, while imposition of penalties under the CWA appears to be mandatory. *Compare* § 74–2–12(E) (use of the term "may") *with* 33 U.S.C.A. § 1319(d) (1983) (use of the term "shall"). *See State v. Lujan,* 90 N.M. 103, 105, 560 P.2d 167, 169 (1977) ("shall" and "must" generally mandatory, not discretionary); *Vaughn v. United Nuclear Corp.,* 98 N.M. 481, 486, 650 P.2d 3, 8 (Ct. App.) (statutory amendment substituting " 'may' " for " 'shall' " clearly intended to make act permissive instead of mandatory), *cert. quashed,* 98 N.M. 478, 649 P.2d 1391 (1982). Even so, federal courts are not in complete agreement that "shall" mandates penalties for CWA violations. *See United States v. Winchester Mun. Utils.,* 944 F.2d 301, 306 (6th Cir.1991) (recognizing that many district courts view civil penalties as discretionary despite statutory use of "shall"); *cf. Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1142 (11th Cir.1990) (although the amount of the award is discretionary, some penalty must be imposed).

33. Because the legislature has chosen not to mandate penalties, or to specify the factors that must be considered when imposing penalties, we hold that the award of penalties is within the sound discretion of the trial court. We find no abuse of discretion in this case. *See Roselli,* 109 N.M. at 512, 787 P.2d at 431 (abuse of discretion defined). In light of this conclusion, and our conclusion that ultimate facts support the judgment, we reject as immaterial NMED's challenge to the court's rationale for the amount of statutory penalties imposed. *See Heeter,* 113 N.M. at 693, 831 P.2d at 992 ("The trial court will not be reversed on appeal when it has arrived at a correct result for the wrong reason.").

## CONCLUSION

34. Having examined the record and the law, we affirm the penalties imposed for nuisance, the statutory penalties imposed for

regulatory violations, and the amount of statutory penalties.

35. **IT IS SO ORDERED.**

FLORES, J., concurs.

HARTZ, J., concurring in part, dissenting in part.

HARTZ, Judge (concurring in part, dissenting in part).

36. Although there is much with which I agree in Judge Alarid's opinion for the panel, I disagree with the analysis in several respects. In my view (1) the district court's finding of mere negligence will not sustain the $10,000 award of punitive damages against the Appellants for the public nuisance predating the effective date of AQCR 751; (2) regulations that specified the *method* to be used to prevent or abate air pollution were prohibited by the statute in effect during the pertinent period, yet we should nevertheless affirm the penalty of $60,000 imposed for the sixty removals of asbestos from the effective date of AQCR 751 through June 5, 1990; and (3) further findings and conclusions are necessary to justify the award of $6837 imposed for dumping asbestos at the old city landfill.

37. First, the $10,000 punitive damage award cannot be sustained because the district court did not find that any of the Appellants had the requisite mental state for imposition of such a sanction. The district court found "that the [Appellants'] conduct was negligent but not willful or reckless." Although the majority correctly states that punitive damages may be awarded as part of a cause of action for common-law public nuisance, none of the cases cited stands for the proposition that punitive damages can be awarded for mere negligence. On the contrary, *State ex rel. Pollution Control Coordinating Board v. Kerr–McGee Corp.*, 619 P.2d 858, 865 (Okla.1980), states that punitive damages can be awarded for willful, grossly negligent, or reckless conduct; and *United States v. Hooker Chemicals & Plastics Corp.*, 748 F.Supp. 67, 77 & n. 11 (W.D.N.Y.1990), indicates that punitive damages for common-law nuisance are to be awarded under the same standard as for punitive damages in

other cases. The universally accepted rule appears to be that "[t]he right to recover punitive damages in nuisance actions is governed by the law concerning the recovery of punitive damages generally." J.L. Litwin, Annotation, *Punitive Damages in Actions Based on Nuisance*, 31 A.L.R.3d 1346, 1349 (1970). One requirement is that "the defendant's wrongful act was characterized by either wilfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, insult, indignity, or fraud." *Id.* I therefore respectfully dissent from the affirmance of the $10,000 punitive award.

38. Second, I agree that the $60,000 award for violations of AQCR 751 should be affirmed. I agree that the regulations establish strict-liability offenses and that NMED is not barred by equitable estoppel. I also agree that the regulations at issue relate to the prevention and abatement of "air pollution" within the meaning of the Air Quality Control Act (AQCA). In addition, the majority may be correct that the regulations at issue constitute emission standards or limitations within the meaning of the AQCA. I am more concerned than the majority, however, by the statutory command that "[r]egulations shall not specify the method to be used to prevent or abate air pollution." NMSA 1978, § 74–2–5(B)(1) (Repl.Pamp.1983 & 1990). (This requirement was removed from the statute by a 1992 amendment, *see* NMSA 1978, § 74–2–5 (Repl.Pamp.1993), but that amendment does not affect this case.) I do not believe that this statutory requirement is rendered totally impotent by the statutory requirement that regulations "prescrib[ing] standards of performance for sources and emission standards for hazardous air pollutants ... shall be ... at least as stringent as required by federal standards of performance[.]" Section 74–2–5(B)(1). Prior decisions by New Mexico courts have taken seriously the prohibition against regulations specifying a method of controlling pollution. For example, responding to an argument that a regulation violated this prohibition, *Kennecott Copper Corp. v. New Mexico Envtl. Improvement Bd.*, 94 N.M. 610, 613, 614 P.2d 22, 25 (Ct.App.), *cert. quashed*, 94

N.M. 675, 615 P.2d 992 (1980), stated: "How Kennecott achieves emission control is not a part of EIB's regulation; that it must bring its control of emissions within the limits allowed is." *See Wylie Bros. Contracting Co. v. Albuquerque–Bernalillo County Air Quality Control Board*, 80 N.M. 633, 645, 459 P.2d 159, 171 (Ct.App.1969).

39. Nevertheless, in this case it is not necessary to determine the precise scope of the prohibition against regulations that specify the method of prevention or abatement. The district court imposed a penalty of $1000 for each of the 60 removals that occurred while AQCR 751 was in effect. NMED alleged that each removal violated six different regulations, but a $1000 penalty could be imposed for a violation of any one of the six. *See* NMSA 1978, § 74–2–12(E) (Repl. Pamp.1983 & 1990). Thus, the penalty can be sustained if at least one of the six regulations does not specify the method to be used to prevent or abate pollution. In my view at least two of the regulations pass that test. One regulation required the Appellants to give prior notification to NMED that they would be removing friable asbestos material. Another prohibited emissions of asbestos material to the outside air during removal operations, without setting forth how that was to be accomplished. Because the Appellants have not adequately challenged the factual basis for finding that those two regulations were violated, the $60,000 penalty must be affirmed.

40. Third, I fail to understand the basis for the majority's affirmance of the $6837 award arising from dumping asbestos waste at the landfill. The award represents approximately three times the cost incurred by NMED to remove the waste. Because the award exceeds the only measure of "actual damages" contained in the record, it appears that the award, at least in part, is a penalty. Yet, the district court did not make findings necessary to support an award of punitive damages. If the district court had found that the removal operations constituted seven violations of provisions of AQCR 751, an award of up to $7000 would be authorized, *see* § 74–2–12(E), but the district court made no such finding. I would therefore remand

to the district court for further findings and conclusions to determine whether there is a proper legal foundation for the award of $6837.

41. Finally, I concur in rejecting the challenges to the judgment raised by the cross-appeal.