[No. 29300-1-I.   Division One.   December 28, 1992.]

SAFE ENVIRONMENT, INC., *Respondent*, v. POLLUTION CONTROL HEARINGS BOARD, ET AL, *Appellants*.

---

[20]Obviously, if Havens prevails on retrial, the prejudgment interest would run to the date of entry of the new judgment.

*Keith D. McGoffin* and *McGoffin & McGoffin,* for appellants.

*Rhys A. Sterling* and *Halinen & Vander Wel, P.S.,* for respondent.

COLEMAN, J. — The Puget Sound Air Pollution Control Agency (PSAPCA) and the Pollution Control Hearings Board (PCHB) appeal the Superior Court's judgment entered September 4, 1991, dismissing the civil penalty against Safe Environment, Inc. (SEI). PSAPCA and PCHB argue that the Superior Court incorrectly construed PSAPCA regulation 1, article 10, section 10.04 as requiring an asbestos contractor to dispose only of asbestos which the contractor itself removed during the process of demolition. We reverse.

SEI was hired by Guarino Excavating, Inc., to remove asbestos from several single-family homes prior to demoli-

tion. Before giving Guarino Excavating an estimate, SEI visited the house at 7505 219th S.W. in Edmonds. The house appeared to have been vandalized. Windows and doors had been removed, and asbestos siding was scattered around the site.

SEI filed with PSAPCA a notice of intent to remove asbestos for a demolition project. The completion date of the project was listed as April 27, 1990. On April 26, 1990, PSAPCA conducted a routine inspection of the Edmonds property. Although no one was at the site, the inspector found tools and other signs that work was in progress. On April 30, 1990, the inspector returned to the property. The tools were gone, indicating that SEI had finished the project. However, the inspector found several small pieces of dry cement asbestos board (CAB) on the property.

PSAPCA issued SEI a notice and order of civil penalty for violation of its asbestos handling regulations. Specifically, PSAPCA alleged: (1) "failure to adequately wet asbestos materials that have been removed or stripped to ensure that they remain wet until they are collected for disposal"; (2) "failure to collect asbestos materials that have been removed or stripped for disposal at the end of each working day"; and (3) "failure to contain asbestos materials that have been removed or stripped in a controlled area at all times until transported to a waste disposal site." PSAPCA imposed a fine of $1,000. SEI appealed the penalty to the PCHB, which affirmed the violations but reduced the penalty from $1,000 to $500, with $250 suspended provided there were no air pollution violations for 3 years. The PCHB stated:

> In their "work on an asbestos project" . . . they left behind asbestos material that was not wet when PSAPCA discovered it, nor had it been collected or contained in a control [sic] area. We conclude SEI violated Sections 10.04(b)(2)(iii)(A) and (B) and (C) when they concluded the job and left asbestos material on the ground in the condition it was subsequently discovered.

SEI appealed the order to the Superior Court, which vacated the order and dismissed the penalty. PSAPCA appeals.

The sole issue on appeal is whether a contractor who was hired to remove asbestos from a building is strictly liable for any asbestos found on the property prior to demolition.

PSAPCA regulation 1, art. 10, § 10.04(b) provides:

(b) It shall be unlawful for any person to cause or allow the removal or encapsulation of asbestos material or to work on an asbestos project unless:

. . . .

(2) The following procedures are employed:

. . . .

(iii) Asbestos materials that have been removed or stripped shall be:

(A) Adequately wetted to ensure that they remain wet until they are collected for disposal; and

(B) Collected for disposal at the end of each working day; and

(C) Contained in a controlled area at all times until transported to a waste disposal site[.]

This section presents two alternatives: It is unlawful (1) to cause or allow asbestos removal or encapsulation in violation of the section, or (2) to work on an asbestos project in violation of the section.

Although PSAPCA initially charged SEI under the "cause or allow" part of the section, the PCHB affirmed the penalty on the basis that SEI "worked on an asbestos project" in violation of the section. An "asbestos project" is defined in the regulations as:

[T]he construction, demolition, repair, maintenance, or renovation of any public or private building or mechanical piping equipment or systems involving the demolition, removal, encapsulation, salvage, or disposal of the material releasing, or likely to release, asbestos fibers into the air.

PSAPCA regulation 1, art. 10, § 10.02(f). The definition of "asbestos removal" is "to take out or strip off asbestos materials." PSAPCA regulation 1, art. 10, § 10.02(g).

A

STANDARD OF REVIEW

The Administrative Procedure Act (APA) defines the scope of judicial review of PCHB decisions. The APA provides:

The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:

. . . .

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter . . ..

RCW 34.05.570(3)(d), (e). In this case, the Superior Court reversed the PCHB based on subsections (d) and (e) above.

■ When reviewing questions of law, the court is "entitled to 'substitute its determination for that of the agency, although the agency's determination is entitled to substantial weight.' " *Asarco, Inc. v. Puget Sound Air Pollution Control Agency*, 112 Wn.2d 314, 317, 771 P.2d 335 (1989) (quoting *Renton Educ. Ass'n v. Public Empl. Relations Comm'n*, 101 Wn.2d 435, 441, 680 P.2d 40 (1984)). In this case, the PCHB determined that, as a matter of law, SEI was responsible for any asbestos material at the site, "regardless of who may initially have caused a piece of asbestos to lie at a particular spot." The Superior Court found that the PCHB erroneously interpreted the law as imposing strict liability on contractors and that there was insufficient evidence that the asbestos found on the site came from SEI's removal project.

## B
### CONSTRUCTION OF THE TERM "ASBESTOS PROJECT"

SEI argues that it cannot be charged with improper handling while working on an asbestos project, as defined, *supra*, because demolition of the Edmonds house had not begun when the inspector found the asbestos. According to SEI, the regulation requires an ongoing demolition project "where asbestos material was either being released or was likely to be released into the air." (Footnote omitted.) Brief of Respondent, at 21. To support this contention, SEI cites *United States v. Syracuse Univ.*, 32 Env't Rep. Cas. 1535 (N.D.N.Y. 1990), in which the court construed a regulation

requiring removal of "friable asbestos from a facility being demolished or renovated before any wrecking or dismantling that would break up the materials. . . ." The court in that case held that no violation could occur until wrecking actually took place. *Syracuse*, at 1536 (quoting 40 C.F.R. § 61.147(a)).

■ SEI's position is unsound for several reasons. First, the regulation at issue in this case differs significantly from the regulation in *Syracuse*. The purpose of the regulation in *Syracuse* is to ensure removal of asbestos prior to wrecking, and thus no violation can occur until the wrecking actually begins. *See Syracuse*, at 1536. This is because at any time prior to wrecking, the asbestos can be removed, thereby avoiding a violation.[1] The regulation at issue here, on the other hand, is designed to prevent improper handling of asbestos materials. A violation of this regulation occurs when a contractor fails to wet, collect, or contain asbestos materials that have been removed. Unlike the regulation in *Syracuse*, a violation can occur whether or not the actual wrecking has begun. See PSAPCA regulation 1, art. 10, § 10.04(b)(2)(iii).

Second, SEI does not really dispute the fact that the Edmonds house was a "demolition project". In its notice of intent to remove asbestos, SEI itself checked the box marked "demolition" under the heading "type of project". As PSAPCA points out, the removal of asbestos is part of the process of demolition. The actual wrecking or dismantling of the structure is another part. Thus, the demolition of the house "involved" the removal of asbestos and constituted an "asbestos project" under the regulation. See PSAPCA regulation 1, art. 10, § 10.02(f) (set forth above). SEI was the contractor work-

---

[1]The regulation at issue in *Syracuse* is similar to PSAPCA regulation 1, art. 10, § 10.04(a), which provides:

"It shall be unlawful for any person to cause or allow any wrecking or dismantling that may break up asbestos materials before removing all asbestos materials from a component." However, this regulation is not at issue in the present case.

ing on this "asbestos project", and the regulation therefore applies.

## C

### STRICT LIABILITY FOR ASBESTOS FOUND
### ON THE SITE

Section 10.04(b)(2)(iii), quoted above, applies to asbestos materials that "have been removed". SEI claims that it was not responsible for the asbestos that the inspector found because SEI had not removed those particular pieces. The PCHB disagreed, stating:

> As the contractor [who] did the work, SEI had the legal responsibility to wet, collect and contain the asbestos material at that site listed on the Notice of Intent, regardless of who may initially have caused a piece of asbestos to lie at a particular spot.

SEI advances several arguments to support its position that contractors should be responsible only for the asbestos that they removed. First, SEI argues, the language of section 10.04 contemplates a present undertaking by an asbestos contractor and, as such, does not refer to asbestos that has been removed by someone else. To support this interpretation, SEI points to language in the regulation requiring that "(1) The removal or encapsulation *is conducted* by a certified asbestos worker; and (2) The following procedures *are employed*[.]" (Italics added by SEI.) Brief of Respondent, at 13; see page 180 for full text of regulation. SEI argues that its interpretation is further supported by the purpose behind the regulations, which is to establish work practices that "control asbestos emissions from asbestos removal and encapsulation projects." Emissions, according to SEI, occur only during the process of removing or wrecking asbestos.

Second, SEI argues that under the PCHB's interpretation "[t]here would be no end to the potential liability imposed upon an asbestos contractor[.]" Brief of Respondent, at 23. SEI writes:

> Envision pieces of asbestos-containing material that are (a) intentionally buried several inches or feet underground by

unknown parties, (b) hidden-away in tall grass and weeds, or (c) innocently stored inside of boxes or containers.

Finally, SEI argues that penalties should be strictly construed and that no liability should be imposed "except in cases which are clear and free from doubt." Brief of Respondent, at 11 (quoting 70 C.J.S. *Penalties* § 2 (1987)). Because PSAPCA has not clearly demonstrated that SEI violated the law, SEI argues, it should not be held liable.

SEI's position is unconvincing for several reasons. First, it is clear that SEI undertook to dispose of all the asbestos on this particular site. SEI inspected the site prior to making its bid and was aware that the removal project would involve picking up and disposing of pieces of CAB siding that had been removed by vandals. James Walsh, vice-president of SEI, testified before the PCHB that, in its estimate to Guarino Excavating, SEI included the cost of picking up the debris. In addition, the fact that SEI employees walked around the site several times, looking for stray pieces of CAB siding, indicates that SEI knew it was responsible for all CAB siding on the site.

Second, although SEI is correct that some of the language in the regulation suggests a "present undertaking", the particular phrase at issue here refers only to materials that "have been removed", not to materials "being removed". Also, the fact that the work procedures in the regulation apply only after the asbestos has been removed indicates that PSAPCA thought some danger of emissions exists even after the removal process is complete.

Third, the plain language of the regulation supports the view that a contractor may be responsible even for asbestos that the contractor itself did not remove. As discussed above, section 10.04(b) presents two alternatives: It is unlawful to "cause or allow" asbestos removal or to "work on an asbestos project" in violation of the section. The first part of the section, the "cause or allow" part, clearly requires proof of causation or knowledge on the part of the contractor. If the

second part, the "work on" part, also required proof of causation in every case, the regulation would be redundant. The more logical interpretation is that the second alternative is broader than the first and allows liability to be imposed in some situations where asbestos has been removed by someone other than the contractor.[2]

There may be cases in which strict liability for all asbestos on the site would cause undue hardship on an asbestos contractor. However, in the present case, because SEI undertook to dispose of all the asbestos on the site, we conclude that SEI was responsible even for asbestos that SEI itself did not remove from the house. Thus, we hold that the penalty was properly imposed. The judgment of the Superior Court is reversed.

FORREST and BAKER, JJ., concur.

Reconsideration denied January 25, 1993.

Review denied at 121 Wn.2d 1022 (1993).

---

[2]The imposition of strict liability is supported by federal case law construing regulations similar to section 10.04(b). *United States v. Hugo Key & Son, Inc.*, 731 F. Supp. 1135, 1140 (D.R.I. 1989); *United States v. Sealtite Corp.*, 739 F. Supp. 464, 468 (E.D. Ark. 1990); *United States v. MPM Contractors, Inc.*, 767 F. Supp. 231, 232-33 (D. Kan. 1990). However, these cases deal with strict liability for violating work practices, not with strict liability for all asbestos found on the site. Thus, they are not particularly helpful in determining whether failing to wet asbestos that has been removed by someone else constitutes an improper work practice.