[No. 17073-6-II.    Division Two.    April 19, 1996.]

WILLIAM DICKSON COMPANY, ET AL., *Appellants*, v. PUGET
SOUND AIR POLLUTION CONTROL AGENCY, ET AL.,
*Respondents.*

*Thomas L. Dickson* and *Law Offices of Thomas L. Dickson*, for appellants.

*Laurie S. Halvorson* of *Puget Sound Air Pollution Control Agency*, for respondents.

BRIDGEWATER, J. — William Dickson Company (the Company), whose subsidiary, HLD Construction, Inc. (HLD) undertook pre-demolition removal of asbestos, appeals the assessment of civil penalties under RCW

70.94.040 of the Washington Clean Air Act when inspectors from Puget Sound Air Pollution Control Agency (PSAPCA) found cement asbestos board (CAB) remaining on the site during demolition. The Washington State Pollution Control Hearings Board (PCHB) and the superior court affirmed these penalties. We hold that the agency's employment of strict liability was appropriate, and that its order was supported by substantial evidence and was not arbitrary or capricious. We affirm.

On March 4, 1991, HLD undertook as subcontractor to the Company to remove 18,000 square feet of CAB from the exterior of a single family dwelling. HLD completed the asbestos removal project that same day. The next day, March 5, 1991, the Company began demolition of the structure though demolition was not scheduled to begin until March 11. On March 5, Joseph Eng, a PSAPCA inspector, visited the site in response to a complaint and observed a backhoe operator loading demolition debris onto a truck. Eng found several pieces of CAB on the ground near the 20-by-50-foot pile of debris. The CAB measured approximately two square feet, and was broken into several large pieces with clean edges.

CAB is sheet material commonly used for siding on houses, and occasionally found in roofs or indoor structures. CAB is approximately one-eighth of an inch thick, and is extremely hard and brittle. It does not emit asbestos into the air (it is nonfriable) unless it is crumbled, which cannot be done by hand.

Before leaving the site, Eng took samples of the CAB for testing; the inspector picked it up with his bare hands. The backhoe operator immediately called John Dickson (Dickson), Vice-President of HLD, who, along with a certified asbestos worker, went to the site and removed the remaining CAB on the same day. The parties agree that the material found was asbestos.

Thereafter, PSAPCA issued, pursuant to RCW 70.94.040, an amended notice and order of civil penalty 7421 in the

amount of $1,000 alleging violations of PSAPCA Regulation III, Article 4, Sections 4.04(a)(4)(B) and (C) and 4.05(a)(1)(B).

RCW 70.94.040 provides as follows: "Except where specified in a variance permit, as provided in RCW 70.94.181, it shall be unlawful for any person to cause air pollution or permit it to be caused in violation of this chapter, or of any ordinance, resolution, rule or regulation validly promulgated hereunder."

Sections 4.04(a)(4)(B) and (C) require that all asbestos-containing materials that have been removed or may have fallen off components during the course of an asbestos project shall be collected for disposal at the end of each working day, and contained in a controlled area at all times until transported to a waste disposal site. Section 4.05(a)(1)(B) requires that all asbestos-containing waste material, after being wetted, is to be sealed in leak tight containers to ensure that the asbestos remains adequately wet when deposited at the waste disposal site. RCW 70.94.431 allows the PSAPCA to assess civil penalties up to $1,000 per day.

HLD filed an appeal with the PCHB, which conducted a hearing. The PCHB affirmed the penalty but suspended $250 of it because of HLD's diligence in promptly removing the asbestos; this reduction in penalty would hold only if HLD did not violate air pollution regulations for three years. The PCHB recognized that HLD had worked on over 100 asbestos removal projects, and that it had an asbestos violation the year before. The trial court affirmed the PCHB's findings and conclusions.

## I

The Company argues that the agency's imposition of strict liability to enforce its regulations is an erroneous interpretation that runs contrary to the authorizing statute, RCW 70.94.040, because that statute requires proof of knowledge and causation. It also argues that asbestos re-

moval should be judged not by whether there was a perfect result, but by a standard similar to that used by the EPA; the EPA examines whether a company failed to perform a required work practice or use a reasonable degree of care. Though these theories were not argued before the PCHB and we need not consider them on appeal, we discuss them to the extent the Company intertwined these issues with the appealable issue of agency interpretation. Case law supports the position that the agency may, within the scope of the statute, impose strict liability to enforce its regulations.

When reviewing agency orders in adjudicative proceedings, the appellate court applies the standards of the Washington Administrative Procedure Act (WAPA) directly to the record before the agency. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993). Under RCW 34.05.570(3) of the WAPA, a reviewing court may reverse an administrative decision when, inter alia, (1) the administrative decision is based on an error of law, (2) the decision is not based on substantial evidence, or (3) the decision is arbitrary or capricious. *Tapper*, 122 Wn.2d at 402.

"On issues of law, we apply the error of law standard of review, permitting us to substitute our judgment for that of the administrative body; however, we accord substantial weight to the agency's view of the law it administers." *Valentine v. Department of Licensing*, 77 Wn. App. 838, 844, 894 P.2d 1352 (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983)), *review denied*, 127 Wn.2d 1020 (1995). "This court will uphold agency regulations which are consistent with the legislative scheme." *ASARCO, Inc. v. Puget Sound Air Pollution Control Agency*, 112 Wn.2d 314, 321, 771 P.2d 335, 74 A.L.R.4th 557 (1989).

We must first ascertain the legislative scheme and then determine whether PSAPCA's regulations, as enforced, are consistent. Under the "Declaration of public policies and purpose" in RCW 70.94.011, the Legislature

recognizes that air emissions from thousands of small individual sources are major contributors to air pollution in many regions of the state. . . . It is declared to be the policy of the state to achieve significant reductions in emissions from those small sources whose aggregate emissions constitute a significant contribution to air pollution in a particular region.

It is the intent of the legislature that air pollution goals be incorporated in the missions and actions of state agencies.

Thus, the Legislature gave to the agency the power to adopt rules relating to air quality and emission standards:

(1) The department shall have all the powers as provided in RCW 70.94.141.

(2) The department, in addition to any other powers vested in it by law . . . shall:

. . . .

(c) Adopt by rule air quality standards and emission standards for the control or prohibition of emissions to the outdoor atmosphere of . . . .

RCW 70.94.331. " 'Air quality standard' means an established concentration, exposure time, and frequency of occurrence of an air contaminant or multiple contaminants in the ambient air which shall not be exceeded." RCW 70.94.030(3).

Pursuant to this legislative scheme, PSAPCA established Regulation III, Article 4, Section 4.01, setting forth the following purpose statement for its asbestos control standard:

The Board . . . recognizes that . . . *any asbestos* emitted to the ambient air is air pollution. . . . Since asbestos is more likely to become airborne when disturbed, . . . the Board of Directors has adopted this regulation to control asbestos emissions from the removal, encapsulation, salvage, disposal, or disturbance of asbestos-containing materials in order to protect the public health.

(Emphasis added.)

■■ Thus, the agency's strict-liability application of its regulations supports the statutory scheme. "By explicitly requiring [the agency] to adopt separate standards for air quality and emissions, the Legislature clearly intended to give [it] the power to regulate emissions that do not by themselves constitute air pollution." *ASARCO*, 112 Wn.2d at 320. The statute recognizes that a series of small emissions create large emissions. The regulations take this fact into account by enforcing the emission of "any asbestos" unless an exemption applies under Sections 4.04(c) or 4.05(b). Its regulations, applied as strict liability, do not violate the statute or exceed the statute's authority.

Also, we uphold the agency's application of strict liability as being consistent with the underlying statute, RCW 70.94.040, which does not require proof of knowledge. The statute's language, "cause or allow," cannot be read to impose a knowledge or intent element because the Legislature removed the word "knowingly" from the statute, in effect reversing the decision in *Puget Sound Air Pollution Control Agency v. Kaiser Aluminum & Chem. Corp.*, 25 Wn. App. 273, 607 P.2d 870, *review denied*, 93 Wn.2d 1023 (1980).

The court in *Kaiser* struck down PSAPCA's Regulation I, Section 9.03(b); it explained that, because the statute required a scienter element, a regulation under that statute could not punish actions without proving knowledge. It held that strict liability for polluting air could not be imposed until the statute proscribing only knowing pollution (RCW 70.94.040) is repealed or modified. Shortly after that case was decided, the Legislature struck the word "knowingly" from the statute, in effect reversing the decision. *See ASARCO*, 112 Wn.2d at 319 (citing Laws of 1980, ch. 175, § 2).

Hence, the statute does not require proof of knowledge, only proof of causation (that is, did the asbestos come from a site where the penalized company had undertaken work and was it left on the worksite).

The Company next argues that a strict liability stan-

dard for all asbestos left on the worksite places undue hardship upon the Company because it holds the Company to a perfect result which is, in many cases, unrealistic. Instead, it argues, the PSAPCA should adopt the work-practices standard used by the EPA, which evaluates a company's work by its compliance with clean-up procedures. Further, the Company argues that a strict liability standard does not serve the objectives of the Washington Clean Air Act because it increases liability in an already liability-ridden business and decreases a contractor's ability to compete.

These arguments are without merit. First, although federal cases support strict liability for laws similar to the PSAPCA regulations, they are not very instructive; the federal cases discuss strict liability for violating work practices, but not strict liability for all asbestos found on site. *See Safe Env't, Inc. v. Pollution Control Hearings Bd.*, 68 Wn. App. 177, 185 n.2, 841 P.2d 1327 (1992), *review denied*, 121 Wn.2d 1022 (1993). Second, these are policy arguments that perhaps are better made at the agency's public rule-making hearing or in an appeal of the agency's rule or rulemaking authority and procedures.

Though "[t]here may be cases in which strict liability for all asbestos on the site would cause undue hardship on an asbestos contractor," *Safe Env't*, 68 Wn. App. at 185, there is no evidence that complying with these rules would have worked undue hardship upon HLD. The Company's ability to compete is not hampered because all competing contractors are held to the same standards; as the respondents argue, Regulation III, Article 4 applies to any person conducting or performing any work on an asbestos project or planning to do so. Further, Dickson admitted that the Company usually hires a qualified asbestos worker to oversee demolition projects, and that this allows it to take care of any uncovered asbestos and properly remove it before inspections. The Company admitted that it neglected to do so here because this was a small project, because demolition began early, and because it does not consider CAB harmful.

■ This admission also defeats the Company's argument that, because it contracted to remove exterior siding, it works undue hardship to hold the Company responsible for asbestos that may have originated from inside the building. When a company undertakes to remove all of the asbestos on site, it is responsible even for asbestos that it did not itself remove from the structure. *See Safe Env't*, 68 Wn. App. at 185. At the hearing, Dickson incorrectly stated that there is no law requiring a contractor to patrol a demolition project for asbestos; the regulations require that *any and all* of the asbestos in an asbestos removal project be removed. This appears to be true though the scope of HLD's contract may have been to remove exterior siding. Dickson testified that HLD thought it had removed "all" the asbestos.

## II

The Company argues that the trial court could not have inferred from the mere presence of CAB on site that HLD caused the violation. Thus, it assigns error to PCHB finding of fact IV stating that it is "more probable than not that the CAB found in the demolition debris pile was exterior siding."

■■ Agency findings of fact will be upheld if supported by evidence that is substantial when viewed in light of the whole record before the court. *Valentine*, 77 Wn. App. at 844; RCW 34.05.570(3)(e). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises. *Olmstead v. Department of Health*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991). The appellate court gives deference to factual decisions; it views

> the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority, a process that necessarily entails acceptance of the fact-finder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.

*State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce,*
65 Wn. App. 614, 618, 829 P.2d 217, *review denied,* 120
Wn.2d 1008 (1992).

There is sufficient evidence to support the PCHB's find-
ing that the Company caused the result. The leftover
asbestos was the type of asbestos HLD was hired to
remove; both were in the form of CAB. Also, the Compa-
ny's failure to appoint a qualified asbestos worker to the
demolition site is evidence supporting causation. Dickson
testified that it is important to pickup all asbestos even if
they're the size of a "fingernail." He explained that, "in
other types of jobs, usually there's arrangements made for
one of them to be on site, usually one of the workers is a
certified asbestos worker and it's kept constantly wet for
that purpose." He admitted that it was a good suggestion
to keep a qualified asbestos worker on each site, but that
economics made it cost-prohibitive for a job this small. He
stated that jobs involving CAB are "almost not a problem."
The evidence that the Company did, in fact, remove the
asbestos is evidence that it was within their responsibility
to remove it. In light of the deference to be given to the
PSAPCA's factual determinations involving credibility
and competing inferences, there is sufficient evidence to
support the PCHB's finding that it was more probable
than not the CAB was exterior siding.

Further, the statute does not prohibit using circum-
stantial evidence to prove causation. Thus, the PCHB
could infer from evidence of leftover CAB that the
company in charge of removing that very form of asbestos
failed to properly dispose of it according to the regula-
tions.

### III

The Company argues that PSAPCA's issuance of a viola-
tion when the asbestos did not present an imminent
danger of death or substantial bodily harm was contrary
to the authorizing statute. It argues that the CAB is

exempt from these safety regulations and asserts as proof the fact that the inspector lifted the CAB with bare hands. It also argues that the PSAPCA's policy of regarding as air pollution any asbestos emitted into the ambient air imposes an unreasonably high standard that goes beyond the enabling statute, RCW 70.94.040.

The Company's arguments are without merit. As set forth above, the statutory and regulatory schemes both consider small amounts of asbestos to be dangerous air pollution. The regulations state that asbestos must be removed prior to demolition; machinery involved in demolishing the building may break the CAB. And, although Dickson stated at the PCHB hearing that the CAB was not friable and "doesn't really cause emission until it's pulverized or crunched," the Company failed to present further evidence or testimony to the PCHB to support this position. The fact that the inspector retrieved the CAB using his bare hands was not presented to the PCHB and, as the trial court pointed out, is not relevant to proving that the CAB was harmless.

The exemption argument was not presented to the PCHB and, in any case, is not well taken; if the CAB is exempt under PSAPCA Section 4.04(c)(2) as Dickson contends, this realization comes too late. In the event of an exemption, subsection (A) of that section requires the Company to comply with notification requirements and to deal properly with the asbestos-containing material until disposed of in accordance with Section 4.05(a)(2). Because the Company did not comply with these procedures, it cannot raise an exception now.

We affirm.

ARMSTRONG and TURNER, JJ., concur.