IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOAQUIN A. MORAN, | ) | No. 68464-7-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON EMPLOYMENT | ) | |
| SECURITY DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | FILED: June 17, 2013 |

SCHINDLER, J. – Joaquin A. Moran challenges the decision of the State of Washington Employment Security Department (Department) disqualifying him from receiving unemployment compensation because he was discharged for misconduct. Moran contends the employer did not establish good cause to vacate the order of default. Moran also contends substantial evidence does not support the conclusion that the employer met its burden of establishing misconduct. We affirm.

FACTS

Moran was the general manager of a Krispy Kreme Doughnuts store in Seattle from February 2003 to August 30, 2010. Moran was responsible for the store's finances, including a weekly financial report. The weekly financial report includes an inventory of all food, packaging, and retail items in the store, with columns listing each item number, quantity, price, beginning inventory, purchases, ending inventory, and

weekly usage. To determine the ending inventory, Moran was required to manually count every napkin, straw, doughnut filling, bag of sugar, cube of shortening, and item of Krispy Kreme logo merchandise on the sales floor or in the stockroom.

In May 2008, Moran intentionally changed the inventory count. In response, Krispy Kreme issued a warning notice to Moran. The "Description of Problem" in the "Warning Notice of Rule Violations/Performance Concerns" states, in pertinent part:

> On 5-12-08, it was determined that the food and packaging inventory levels at [Seattle] were overstated by thousands of dollars. Further investigation revealed intentional padding of some items. [Moran] admitted being aware of some of the misstated values.

The Warning Notice informed Moran what steps he needed to take to correct the problem and the consequences for failing to do so. The Notice states, in pertinent part:

> Immediate implementation of company standard inventory procedures. [Moran] has agreed to record all inventory counts and values accurately. . . . This is a last and final warning. Any future inventory inaccuracies, dishonesty, or manipulation will result in termination of [Moran]'s employment with KremeWorks.

Moran signed the Warning Notice acknowledging that he understood the inventory procedures and the consequences for any future violations.

At some point after receiving the Warning Notice, Moran delegated the inventory count to his office supervisor Ayde Velasco. However, because Moran was ultimately responsible for submitting the final inventory report, he checked the inventory count prepared by Velasco.

In August 2010, Moran left to go on vacation for two weeks. While he was gone, the assistant manager conducted the weekly inventory and discovered discrepancies

2

between what Moran reported and what was actually in the store. For example, Moran included Krispy Kreme logo mugs and sweatshirts, even though these items had been given away to store employees in February or March 2010. Likewise, Moran continued to count some packaged juice drinks as part of the inventory after the store had sold out of the drinks. Moran also over reported the amount of shortening in the store's inventory, claiming that more shortening was in use in the doughnut fryer than was physically possible. Velasco said that Moran instructed her to continue to include items that were no longer in the store.

When Moran returned, his supervisor Melissa Surby-Curtin terminated him. The Department granted Moran unemployment compensation. Krispy Kreme appealed and requested an administrative hearing. On November 8, 2010, the State of Washington Office of Administrative Hearings (OAH) sent Moran and Krispy Kreme a notice scheduling a telephonic hearing for November 22. The notice stated that the parties were required to contact OAH at 9:15 a.m. and provide their telephone number so that the Administrative Law Judge (ALJ) could call them back on a conference call. The notice contained, in bold type, the following language: "The appellant's failure to appear will result in a Default."

The day before the hearing, Krispy Kreme representative Michele Funk contacted Surby-Curtin to verify her phone number. Funk told Surby-Curtin that she would provide her phone number to the ALJ and the ALJ would call Surby-Curtin at 9:15 a.m.

3

On the date of the hearing, Funk provided OAH with the contact information for Surby-Curtin and another witness, Sabina Heacon. For reasons not clear from the record, the start of the hearing was delayed. When the ALJ attempted to contact Surby-Curtin at approximately 10:00 a.m., the call went to voicemail. Funk requested the ALJ continue the hearing until Surby-Curtin was available. The ALJ denied Funk's request. The ALJ entered an order of default on the grounds that in the absence of its key witness, Krispy Kreme failed to appear.

Krispy Kreme appealed the default order to the Commissioner of the Department. The Commissioner remanded to the ALJ to determine whether Krispy Kreme could show good cause for the failure to appear and, if so, to address the merits of the appeal.

On remand, Surby-Curtin testified that she understood the hearing was scheduled to start at 9:15 a.m. and that she waited by her phone for 30 to 45 minutes. When she did not receive a call from the ALJ, she assumed that the hearing had been cancelled due to the heavy snow in the area. Surby-Curtin said that due to the weather, the store was understaffed and she left her office briefly to help out. The ALJ found that Krispy Kreme established good cause for its failure to appear at the prior hearing and vacated the order of default.

Moran, Surby-Curtin, Velasco, and another Krispy Kreme general manager, Anthony Powell, testified regarding Moran's termination. Velasco testified that Moran instructed her to include items in the inventory that were no longer in the store. As an example, Velasco said that Moran told her to include items that had been sold or given away, such as the mugs, sweatshirts, and juice drinks, and to count 18 cubes of

4

shortening when the fryer had a capacity for only 14 cubes. According to Velasco, Moran's motivation for overstating the inventory totals was to create the impression that the store was more productive and profitable than it actually was.

Moran denied changing the inventory totals or instructing Velasco to do so. Moran claimed that he failed to notice that the mugs, sweatshirts, and juice drinks had not been removed from the inventory totals, and that he had instructed Velasco to use her own judgment in estimating the amount of shortening. But Moran said that he checked Velasco's inventory count and investigated any potential discrepancies.

The ALJ found the testimony of Velasco and Surby-Curtin regarding the inventory count more credible than Moran's testimony. The ALJ specifically found Moran's testimony that he was unaware of any inaccuracies in the inventory totals not credible because Moran testified that he regularly reviewed the inventory report. The ALJ found that Moran either instructed Velasco to inflate the inventory numbers or that he wholly failed to supervise her and review her work. The ALJ found that Moran was aware of the inventory procedures and knew that any future inaccuracies in the inventory report would result in termination. Because Moran was responsible for submitting accurate inventory reports to his supervisors, the ALJ concluded that Krispy Kreme established Moran committed misconduct disqualifying him from receiving unemployment compensation.

Moran petitioned for review of the ALJ decision to the Commissioner. The Commissioner adopted the ALJ's findings of facts and conclusions of law and affirmed

the ALJ's order. Moran appealed to the superior court. The court affirmed the Department's decision.

## ANALYSIS

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a final administrative decision of the Department. Tapper v. Emp't Sec. Dep't., 122 Wn.2d 397, 402, 858 P.2d 494 (1993). When reviewing agency action, this court "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper, 122 Wn.2d at 402. We will reverse an agency decision only if (1) the agency erroneously interpreted or applied the law, (2) substantial evidence does not support the decision, or (3) the order is arbitrary or capricious. RCW 34.05.570(3). The party challenging an agency decision must establish error and demonstrate the agency action is invalid. RCW 34.05.570(1)(a). This court reviews the Commissioner's ruling rather than the underlying ALJ decision, except to the extent that the Commissioner adopts the ALJ's findings of fact. Tapper, 122 Wn.2d at 405-06. Designated precedential agency decisions are persuasive authority under RCW 50.32.095. Martini v. Emp't Sec. Dep't, 98 Wn. App. 791, 795, 990 P.2d 981 (2000).

Default Judgment

Moran argues that the ALJ erred in vacating the order finding Krispy Kreme in default for failure to appear at the hearing. If a party fails to attend or participate in an administrative hearing, an ALJ has the authority to find that party in default. RCW 34.05.440(2). A default judgment may be set aside only upon a showing of "good

cause" for the failure to appear. WAC 192-04-180. A party establishes good cause for failure to participate in a hearing if the circumstances would have deterred a reasonably prudent person from doing so. In re Shay, Empl. Sec. Comm'r Dec.2d 970, 2011 WL 8129816. "A reasonably prudent person is an individual who uses good judgment or common sense in handling practical matters." In re Shay, Empl. Sec. Comm'r Dec.2d 970, 2011 WL 8129816.[1]

Default judgments are generally disfavored because courts prefer to decide a case on its merits. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979).

We review a decision to set aside a default judgment for abuse of discretion. Graves v. Emp't Sec. Dep't, 144 Wn. App. 302, 309, 182 P.3d 1004 (2008). An abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Graves, 144 Wn. App. at 309.

Here, the ALJ did not abuse its discretion in vacating the order of default. Substantial evidence supports the determination that Krispy Kreme showed good cause for failure to appear. Funk contacted Surby-Curtin the day before the hearing to remind her that the hearing was scheduled for 9:15 a.m. and to confirm the telephone number. Funk contacted OAH and provided Surby-Curtin's telephone number. There was heavy snow on the morning of the hearing. After waiting by her phone for 30 to 45 minutes for

---

[1] This standard has been interpreted as comparable to the "good cause" standard the courts use when setting aside a default order under CR 55(c). In re Shay, Empl. Sec. Comm'r Dec.2d 970, 2011 WL 8129816 (citing Graves v. Emp't Sec. Dep't, 144 Wn. App. 302, 310-11, 182 P.3d 1004 (2008)).

the hearing to begin, Surby-Curtin stepped away from her desk for a matter of minutes to help out at the store. The ALJ did not abuse its discretion in concluding that Krispy Kreme exercised due diligence in ensuring the presence of its witness, and the failure of the witness to appear was excusable.

Disqualifying Misconduct

Whether an employee's actions constitute misconduct is a mixed question of fact and law. Tapper, 122 Wn.2d at 402-03. We first review the ALJ's findings of fact to determine whether, based on the record, substantial evidence supported those findings. William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). Substantial evidence is evidence that would persuade a fair-minded person of the truth or correctness of the matter. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wn.2d 543, 553, 14 P.3d 133 (2000). We consider the evidence in the light most favorable to the prevailing party below, and do not substitute our judgment for the ALJ's resolution of conflicting testimony or evaluation of witness credibility. William Dickson, 81 Wn. App. at 411. We then review de novo whether the ALJ correctly applied the law to the findings, according substantial weight to the agency's interpretation of the law. William Dickson, 81 Wn. App. at 407. Accordingly, we must determine whether substantial evidence supports the ALJ's factual findings and, if so, whether these facts constitute disqualifying misconduct.

Under the Employment Security Act, an individual is disqualified from receiving benefits if he or she is discharged "for misconduct connected with his or her work." RCW 50.20.066. The statute gives a general definition of "misconduct." RCW

8

50.04.294(1). Certain types of conduct are defined as misconduct per se, including a "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(f). Misconduct does not include:

> (a) Inefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity;
> (b) Inadvertence or ordinary negligence in isolated instances; or
> (c) Good faith errors in judgment or discretion.

RCW 50.04.294(3).

Instead, Moran argues that because Velasco committed the inventory errors, he is guilty only of failing to properly supervise. Moran asserts that his actions do not constitute misconduct as defined in RCW 50.04.294(2). Moran claims his conduct constitutes "[i]nadvertence or ordinary negligence in isolated instances" or "[g]ood faith errors in judgment or discretion." RCW 50.04.294(3)(b), (c). We disagree.

Substantial evidence supports the ALJ's conclusion that Moran committed misconduct by knowingly violating Krispy Kreme's inventory procedures. There is no dispute that Moran had been disciplined previously for misstating inventory totals. Krispy Kreme warned him that any future inaccuracies would result in his termination. Moran acknowledged that he understood the inventory procedures and the consequences for any future violations. But thereafter, Moran submitted inventory reports with artificially inflated numbers for retail products and food ingredients. Moran concedes the inventory totals were incorrect, but argues that the evidence showed that Velasco counted the inventory incorrectly. Moran ignores the ALJ finding that Velasco's

9

No. 68464-7-I/10

testimony was more credible than his. Further, because Moran testified that he reviewed Velasco's inventory reports after she completed them, the record does not support his claim that he made a good faith error in judgment in failing to do so.

We affirm the decision disqualifying Moran from receiving unemployment compensation.

WE CONCUR:

10