IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROCHELLE S. CORNWELL, | ) | |
| | ) | No. 38996-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| EMPLOYMENT SECURITY | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C. J. — Rochelle Cornwell appeals the decision of the Employment Security Department's denying her two applications for unemployment benefits. We affirm both denials.

## FACTS

We draw the facts from testimony and evidence presented during an administrative hearing. We defer to the Employment Security Department's (ESD's) findings of fact.

Beginning on June 9, 2020, Rochelle Cornwell worked for U-Haul as a customer service representative. Cornwell's late arrival to work shifts prompted manager Michael Fenton to issue verbal warnings. For example, Cornwell was fifteen to twenty minutes late to her shift on June 22, 2020. She arrived late again on July 1, 2020. On July 5,

Cornwell called in sick, while complaining of heat stroke. She appeared late to her shift on July 6.

As a result of her tardinesses, Michael Fenton, on August 15, 2020, offered Cornwell a housekeeper position for storage units, in which position timeliness was less critical. Cornwell still arrived late to her scheduled shifts. Fenton issued verbal warnings every time Cornwell was late or absent.

On August 17, Rochelle Cornwell texted Fenton saying she needed Family Medical Leave Act (FMLA) leave for five weeks. Fenton doubted that she qualified for the program since she had not worked at U-Haul long enough. Cornwell assured Fenton that she qualified. Although Fenton asked Cornwell to provide paperwork showing her approval for FMLA leave, Cornwell never provided any. Fenton decided he would not schedule Cornwell for five weeks regardless of FMLA availability.

Rochelle Cornwell returned to work at U-Haul on September 22, 2020. After Rochelle Cornwell's return, Michael Fenton observed and warned Cornwell about deficiencies in her work. On October 10, 2020, while working a closing shift, Cornwell closed the office early and did not follow closing procedures. On October 27, Cornwell texted Fenton that she would not be able to work either her ordinary shifts or the extra shifts for a week because of travel. On October 29, Fenton noticed that, on an earlier work day, Cornwell left a storage unit open, unlocked, and dirty. When asked about the condition of the unit, Cornwell replied that she parked her car in the unit to check tire

2

pressure, needed to leave suddenly, and lacked time to close the garage door.  Fenton terminated Cornwell's employment on October 29, 2020.

Rochelle Cornwell applied for unemployment benefits for time on leave between August 17, 2020 and September 21, 2020 and for dates after her termination from employment on October 29, 2020.  On February 5, 2021, ESD issued a letter denying Cornwell unemployment benefits during her leave.  ESD listed, as reasons for the denial, that Cornwell was not available for work due to a personal medical condition and Cornwell's need to care for another person.  ESD later issued a second letter denying unemployment benefits after October 25, 2020 due to Cornwell's discharge from U-Haul resulting from her misconduct.

## PROCEDURE

Rochelle Cornwell contested both denials of unemployment benefits.  The ESD consolidated both challenges.  An Administrative Law Judge (ALJ) conducted an evidentiary hearing.

During the administrative hearing, the ALJ asked Rochelle Cornwell whether she had received and reviewed all documents related to the consolidated dockets.  Cornwell answered affirmatively.  The document packets included all evidentiary exhibits. Cornwell informed the ALJ she had no objection to admitting any exhibit.

U-Haul manager Michael Fenton testified during the administrative hearing. Following Fenton's testimony, the ALJ inquired whether Rochelle Cornwell had any questions to ask the U-Haul manager, and Cornwell declined.

Rochelle Cornwell testified. When asked whether she was first late to her shift on June 22, 2020, Cornwell responded that Michael Fenton's testimony was "[s]omewhat accurate." Administrative Record (AR) at 42. Cornwell testified that she did not know what time she started work on the pertinent date. Cornwell explained she would sometimes be late because she held a second job, cared for her grandfather, and a train would sometimes interrupt traffic on her way to work.

Rochelle Cornwell testified she was "approved through the State and through their [Human Resource Department] at U-Haul" for five weeks of FMLA leave beginning August 17, 2020. AR at 43. According to Cornwell, she took the FMLA leave in order to care for her son, who was newly diagnosed with Type I diabetes and hospitalized.

The ALJ asked Rochelle Cornwell about an exhibit she submitted in support of her claim for five weeks of leave under FMLA:

> THE COURT: . . . Mrs. Cornwell, I have a question with regards to the FMLA, and it looks like that's on Exhibit 33 of the, uh, packet, uh for Docket Number 163611. Um, I'm trying to understand what dates this was and was—were you approved officially, and, if so, why is there not [a] signature. I mean, it's just—it looks different.
> MS. CORNWELL: Uh, are you talking about the copy that I sent of my FMLA?
> THE COURT: Yes.

MS. CORNWELL: Okay. Let me find it here real quick. . . . Okay. Um, this was a form that I had received—it's really dark on here. I believe this was the one that was submitted—or that was, um, provided to me by the doctor—
THE COURT: Uh-huh.
MS. CORNWELL: —for my FMLA, and I hadn't signed it yet.
THE COURT: Okay. And is there a date that this was provided, too? Am I missing the date? I don't see it.
MS. CORNWELL: Um, the date is not on there.

AR at 62-63. Our copy of the exhibit is dark and illegible.

Rochelle Cornwell testified that, on October 29, 2020, she informed Michael Fenton that she needed the next week off to help care for her daughter's mental health. Fenton fired her that day.

In a consolidated initial order, the ALJ entered findings of fact about instances in which Rochelle Cornwell was either absent from or tardy to her work shifts:

5. On August 15, 2020, the Claimant's job position changed to housekeeping and cleaning crew after she had several instances of tardiness and not adhering to her schedule. The Employer offered the Claimant to change positions so the Claimant could have an open flexible schedule. The Claimant accepted the change of positions.
. . . .
7. On October 10, 2020, one of the employees passed away and the Employer asked if the Claimant would like to work additional hours. The Claimant agreed. The Claimant then informed the Employer that she would not be able to work at her regular shifts as well as the newly accepted extra time for one week because she will be traveling.
8. The Claimant was late to work on several occasions. (Exhibits 23 and 24). The Claimant's tardiness started on June 22, 2020 when she was 15 to 30 minutes late for work and continued throughout her employment.
. . . .
10. On July 1, 2020, the Claimant was late. The Claimant did not work on July 4, 2020 when she was scheduled to work.

11. On July 5, 2020, the Claimant called in sick due to a heatstroke. (Exhibit 23). The Claimant was late for work on July 6, 2020.

. . . .

14. On August 17, 2020, the Claimant went on Paid Family Medical Leave of Absences (hereafter "FMLA") for the duration of 5 weeks until September 21, 2020 (there is no documentary evidence to prove the Claimant was approved for the program). The Employer accepted her leave of absence. The Claimant's manager requested a copy of the approved FMLA but the Claimant failed to provide it to him.

15. After the Claimant returned from FMLA, the Claimant continued to be tardy and absent in several occasions and received numerous verbal warnings. In at least one occasion, on October 29, 2020, the Claimant did not finish her work and left the storage dirty.

16. On October 29, 2020, the Claimant requested another week off from work because her daughter had mental health issues and wanted to be admitted into the hospital. The Claimant was also not going to be in town during that week.

. . . .

23. The Claimant was unavailable for work from October 29, 2020 through November 5, 2020 because she was out of town and caring for her daughter.

AR at 113-14.

On review, the ESD commissioner largely adopted the ALJ's findings of fact and conclusions of law. The commissioner, however, corrected findings 14 and 15 that address Rochelle Cornwell's claim that her five-week absence was taken under the FMLA.

[W]e correct Findings of Fact Nos. 14 and 15 to reflect that claimant testified she took medical leave under the Family Medical Leave Act ("FMLA") for the five-week period from August 17, 2020, through September 21, 2020. As claimant has been receiving unemployment insurance benefits while working for employer on a part-time basis, she cannot receive state Paid Family Medical Leave ("PFML") benefits, as stated in Findings of Fact Nos. 14 and 15, in the same work week due to

limitations in the PFML statute. *See* RCW 50A.15.100. That said, we find claimant's contention that she was absent for work for five weeks pursuant to the FMLA suspect. The FMLA requires that an employee work for a covered employer for at least 1,250 hours during the twelve months prior to the start of leave. *See* 29 C.F.R. § 825.110(d). Here, claimant only worked for interested employer on a part-time basis from June 09, 2020, through August 17, 2020, prior to her five-week absence from work. Further, an employer is required to authorize and retain all FMLA paperwork and medical information. 29 C.F.R. § 825.500. Claimant refused to provide her employer with FMLA documentation.

AR at 173 (footnote omitted).

Based on its adopted and revised findings, the ESD commissioner denied Rochelle Cornwell unemployment benefits. The commissioner concluded that Cornwell was not entitled to unemployment benefits for the five weeks she claimed for FMLA leave because she was not available for work during those weeks. The commissioner also concluded that Cornwell's firing on October 29, 2020 was for employee misconduct due to tardiness and absence from scheduled work shifts.

Rochelle Cornwell appealed the denial of unemployment benefits to the Spokane County Superior Court. The superior court affirmed ESD's decision.

LAW AND ANALYSIS

Rochelle Cornwell forwards five principal contentions before this court. First, ESD erred when consolidating her two challenges to the denial of unemployment benefits. Second, the ALJ denied her the opportunity to cross-examine Michael Fenton. Third, ESD erred in entering findings of fact 5, 7, 8, 10, 11, 15, 16, and 23. Fourth, ESD

7

failed to recognize she took leave pursuant to the FMLA. Fifth, she did not engage in misconduct. She asks that we order ESD to pay her unemployment benefits.

ESD urges this court to reject appellate review because of Rochelle Cornwell's failure to comply with the Rules of Appellate Procedure. ESD highlights that Cornwell's appellate brief fails to properly assign error to any finding or conclusion as required by RAP 10.3(h), fails to properly outline the facts underlying her appeal in a statement of the case as required by RAP 10.3(a)(5), and fails to provide legal authority or analysis to support her arguments as required by RAP 10.3(a)(6). ESD also asks, because Cornwell fails to assign error to any finding of fact, that this court accept all findings as verities on appeal.

This court may refuse to consider an issue on appeal that lacks the support of adequate, cogent argument and briefing. *Satomi Owners Association v. Satomi, LLC*, 167 Wn.2d 781, 808, 225 P.3d 213 (2009). Nevertheless, this court ultimately seeks to promote justice and facilitate the resolution of appeals on the merits. "Cases and issues will not be determined on the basis of compliance or noncompliance with [the Rules of Appellate Procedure] except in compelling circumstances where justice demands." RAP 1.2(a). Cornwell's presentation of her claimed error suffices for ESD to meaningfully respond to the issues she raises.

The Administrative Procedure Act, chapter 34.05 RCW, governs judicial review of a decision by the ESD commissioner. RCW 50.32.120; RCW 34.05.570. On review,

this court sits in the same position as the superior court and gives no deference to the superior court's rulings. *Darkenwald v. Employment Security Department*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). This court reviews the commissioner's decision except to the extent the commissioner adopted the ALJ's findings. *Darkenwald v. Employment Security Department*, 183 Wn.2d 237, 244 (2015).

Consolidation

Rochelle Cornwell contends ESD erred by considering both dockets together in a consolidated review process. This court reviews the department proceedings for unlawful procedure or failure to follow a prescribed procedure. RCW 34.05.570(3)(c). Under a pertinent regulation, the department may consolidate separate unemployment insurance claims "if there is a substantial identity of issues and the rights of no party will be adversely affected thereby," as long as the consolidated proceeding "provide[s] for the hearing of additional or unique issues relating to individual cases." WAC 192-04-140.

ESD committed no error by considering both of Rochelle Cornwell's claims. The issues shared an overlap of relevant facts. Consolidation saved time for ESD personnel and the parties. Cornwell demonstrates no prejudice from consolidation. Despite consolidation, both the ALJ and the commissioner issued separate legal conclusions pertinent to each determination.

No. 38996-1-III,
*Cornwell v. Employment Security Department*

Cross-Examination

Rochelle Cornwell argues she lacked the opportunity to cross-examine U-Haul manager Michael Fenton during the administrative hearing. Nevertheless, when the ALJ offered Cornwell a chance, she said "no." AR at 41. A presiding officer to an administrative hearing must "afford to all parties the opportunity to . . . conduct cross-examination." RCW 34.05.449(2). The ALJ afforded Cornwell an opportunity.

Rochelle Cornwell also argues she was not allowed to examine evidentiary exhibits. The record, however, shows that, during the evidentiary hearing, Cornwell explicitly acknowledged that she had reviewed all exhibits and that she had no objection to any exhibit.

Findings of Fact

Rochelle Cornwell assigns error to findings of fact 5, 7, 8, 10, 11, 15, 16, and 23. We review the commissioner's findings of fact for substantial evidence. RCW 34.05.570(3)(e). Evidence is substantial if it is sufficient to persuade a rational, fair-minded person of the finding's truth. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). This court views all evidence and reasonable inferences in the light most favorable to the prevailing party and does not reweigh evidence or determine witness credibility. *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 411, 914 P.2d 750 (1996).

We detect a single unsupported finding. In finding 10, the ALJ found that

Cornwell did not work on July 4, 2020. But the only evidence in the record referencing

that date is the e-mail written by Michael Fenton, in which Fenton claimed "the 4th went

ok." AR Supp. at 1. Fenton's testimony and Cornwell's testimony supports all other

challenged findings. The ALJ also found, in several unchallenged findings, other

instances of Cornwell's tardiness. Those unchallenged findings are verities on appeal.

*Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 244 (2015).

## FMLA Leave

Rochelle Cornwell argues that the department failed to recognize her FMLA leave

when denying her unemployment benefits. We conceptualize the issue of whether

Cornwell exercised FMLA leave as a mixed question of law and fact. We deem the

question of whether Cornwell ever applied for or obtained approval for FMLA leave to

involve a factual finding requiring support by substantial evidence in the record. The

question of whether Cornwell fulfilled the requirements to FMLA is a legal question

governed by federal law.

Resolving a mixed question of law and fact requires establishing the relevant facts,

determining the applicable law, and applying that law to the facts. *Tapper v. Employment

Security Department*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We afford factual

findings deference. *Tapper v. Employment Security Department*, 122 Wn.2d 397, 402

(1993).  We review determinations of law and the application of law to the facts de novo.

*Erwin v. Cotter Health Centers*, 161 Wn.2d 676, 687, 167 P.3d 1112 (2007).

We defer to the commissioner's suspicion that Rochelle Cornwell never exercised FMLA leave despite Cornwell's testimony to the contrary.  Cornwell submitted an unsigned, undated form that she claimed qualified her for FMLA leave.  According to Michael Fenton, U-Haul never received any documentation related to FMLA leave. Fenton testified that he simply removed Cornwell from the work schedule for five weeks. In any event, an employee is not eligible for FMLA leave until employed for at least twelve months.  29 CFR § 825.110(a)(1).  Cornwell was employed at U-Haul for less than three months at the time she requested the leave.

The ESD commissioner properly concluded that Rochelle Cornwell was unavailable for work during the five weeks she departed work to care for her son.  An individual must be able and available to work to qualify for unemployment benefits. RCW 50.20.010(1)(c).  The individual must be capable of reporting for suitable work and available at least forty hours during the week.  WAC 192-170-010(1)(b), (d).  The commissioner properly concluded that Cornwell did not meet these requirements.

Employee Misconduct

Even if we disregard the unsupported finding of Rochelle Cornwell's absence from work on July 4, 2020, the ESD commissioner's findings substantiated the conclusion that U-Haul terminated Cornwell's employment for employee misconduct.

No. 38996-1-III,
*Cornwell v. Employment Security Department*

An employee discharged for misconduct shall be disqualified from benefits. RCW 50.20.066. Misconduct may include repeated inexcusable tardiness following warnings by the employer as well as repeated and inexcusable absences. RCW 50.04.294(2)(b), (d). Absences and tardiness are repeated and inexcusable when they are unjustified or "would not cause a reasonably prudent person in the same circumstances" to be tardy or absent. WAC 192-150-210(1), (3). The commissioner found multiple instances of unexcused tardiness and absences. The commissioner found Cornwell was warned about her tardiness on multiple occasions. The commissioner was not required to accept Cornwell's explanations for her tardiness.

## CONCLUSION

We affirm the superior court's affirmation of ESD's denial of unemployment benefits.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____  _____
Siddoway, J.            Lawrence-Berrey, J.

13